Charles BRATCHER, Appellant,

v.

Sheila BRATCHER, Appellee.

No. 1999–CA–001194–MR.

Court of Appeals of Kentucky.

Aug. 18, 2000.

Albert W. Barber, Jr., Owensboro, Kentucky, for Appellant.

Ronald M. Sullivan, Owensboro, Kentucky, for Appellee.

BEFORE: COMBS, KNOPF and TACKETT, Judges.

## OPINION

TACKETT, Judge:

This appeal is taken from the judgment of the Daviess Circuit Court in the dissolution of marriage action of Sheila Bratcher (Sheila) and Charles Bratcher (Charles). We affirm.

Charles and Sheila were married on December 18, 1965, in Daviess County, Kentucky. The couple experienced marital difficulties as early as 1991 that ultimately resulted in Charles moving to separate living accommodations in July 1994. In September 1994, Charles used $100,000 of marital assets, specifically proceeds from timber sales, to purchase his recently deceased brother's welding business, Superior Welding. At the time of the purchase, Charles and Sheila orally agreed Sheila would not make claim to Superior Welding in the event they divorced. Superior Welding was shut down in 1996 with existing assets of $50,000. Sheila filed for dissolution on January 9, 1997. The decree dissolving the marriage was entered on December 31, 1997.

During 1997, assets were acquired in the form of Sheila's earnings from her employment at Owensboro Mercy Health Systems, Charles's profits from farming, and payment of debts owed to Charles by a third party, Anderson Insurance Company. Sheila had approximately $5,000 in payroll taxes withheld from her 1997 earnings to offset her estimated income tax liability for 1997. Over the course of her thirty-plus

years of employment, Sheila accrued approximately $10,800 worth of sick leave and $2,800 worth of vacation leave. In the event she terminates her employment, she will lose any unused accrued sick leave but will be paid for any unused vacation.

Charles argues the Daviess Circuit Court erred when it held: (1) Superior Welding was a marital asset because the oral agreement was an unconscionable separation agreement and not a valid agreement of the parties; (2) the evidence was sufficient to support Charles's dissipation of $77,860 in marital assets; (3) the sick leave and vacation Sheila accrued were not marital assets; (4) the $5,000 withheld in 1997 from Sheila's pay for her 1997 income taxes was not a marital asset; and (5) the $15,000 prepayment made in 1997 for Charles's 1998 insurance needs was a marital asset.

▪ Property acquired and held after marriage is a marital asset unless it falls within one of the exceptions listed in Kentucky Revised Statute (KRS) 403.190(2). Charles argues Superior Welding should be excluded from the marital assets under KRS 403.190(2)(d) because of the oral agreement he and Sheila made in September 1994. This agreement was made following the separation between Charles and Sheila and at a time when they were contemplating divorce. An agreement made under such circumstances is reasonably construed a separation agreement under KRS 403.180. The exception provided in KRS 403.190(2)(d) generally applies to agreements of the parties. KRS 403.180 provides additional requirements specifically for agreements between the parties "attendant upon their separation or the dissolution of their marriage." To apply 403.190(2)(d) but not KRS 403.180 would negate the legislature's intent in passing

specific legislation to place additional requirements on separation initiated agreements. KRS 403.180 requires separation agreements be in writing and signed by the parties. *Carter v. Carter*, Ky.App., 656 S.W.2d 257, 258 (1983). Charles and Sheila's agreement was oral, neither written nor signed by the parties, so it was not a valid separation agreement under the requirements of KRS 403.180. The finding of the court was therefore not clearly in error.[1]

▪ Charles's second assignment of error is the inclusion of $77,860 in marital assets that were allegedly dissipated during 1997. The court found the dissipation occurred based on evidence presented from testimony of a former Internal Revenue Service manager, who used Charles's receipts of income and disbursements to demonstrate that $77,860 of marital assets were not accounted for as having been used for a marital purpose. Such dispersal of marital property without an accounting is sufficient justification to include the unaccounted amount in the total marital assets. *Barriger v. Barriger*, Ky., 514 S.W.2d 114, 115 (1974). In *Brosick v. Brosick*, Ky.App., 974 S.W.2d 498, 502 (1998), clear and convincing evidence was not required to shift the burden of proof to the alleged dissipator to show the marital assets were not used for nonmarital purposes. The evidence must only show dissipation occurred during a separation or when dissolution was pending and that there was a clear intent on the part of the dissipator to deprive the spouse of marital assets. *Id.* at 500. In *Brosick*, the court found dissipation where the dissipator was shown to have an intent to divorce in the future and failed to account for monies in a credit union account and joint checking

1. Because the agreement is ineffective, it is not necessary to reach a decision on the merits of the adequacy of consideration or its conscionability. It is noted the court found the terms unconscionable. *Shraberg v. Shraberg*, Ky., 939 S.W.2d 330, 333 (1997), held a finding of unconscionability requires only "a

showing of fundamental unfairness as determined 'after considering the economic circumstances of the parties and any other relevant evidence....' KRS 403.180(2)." The evidence presented is sufficient to support the court's finding of unconscionability under this standard.

account with his mistress where the total amount was above her individual means.

Sheila Bratcher petitioned for dissolution on January 9, 1997, thus the dissipation clearly occurred during a time when dissolution was pending. The facts here are similar to those in *Brosick* in that there was a discrepancy between the total amount of assets known to have been received by the husband and the amount said to be available as marital property. Furthermore, the husband did not show the discrepancy was the result of expenditures for valid marital purposes. As in *Brosick*, the evidence presented by Sheila's witness is sufficient under the preponderance of the evidence standard to support the court's finding that first there was dissipation and second it occurred during a period of separation.

◼ In *Robinette v. Robinette*, Ky.App., 736 S.W.2d 351, 354 (1987), the party bringing the charge of dissipation produced evidence that checks were spent other than as stated but did not produce evidence as to how the monies were actually spent, even though the complaining party had access to that information. This case differs from *Robinette* in that Sheila did not have any information as to how the dissipated funds were spent, or the means to discover such information. It would be inequitable to require the party claiming dissipation to show exactly what use was made of marital assets because this information is not as readily available to the complaining party as it is to the dissipating party. Additionally, the dissipating party has been put on notice that an accounting may be necessary because a separation has occurred or there is a dissolution pending. "Once the dissipation is shown, placing the burden of going forward with the evidence on the spouse charged with the dissipation is reasonable because that spouse is in a better position to account for these assets." *Brosick, supra* at 502. The court did not clearly err in concluding the $77,860 was a dissipated marital asset.

◼ The third issue raised by Charles is the court's finding that Sheila's accrued sick leave and vacation leave were nonmarital assets. The issue of whether accrued leave time is a marital asset capable of valuation and division is one of first impression in Kentucky. Eight other jurisdictions have issued opinions on this issue. *Thomasian v. Thomasian*, 79 Md.App. 188, 556 A.2d 675 (1989); *Schober v. Schober*, 692 P.2d 267 (Alaska 1984); *Smith v. Smith*, 733 S.W.2d 915 (Tex.App.1987); *In re Marriage of Zummo*, 167 Ill.App.3d 566, 118 Ill.Dec. 339, 521 N.E.2d 621 (1988); *Brotman v. Brotman*, 528 So.2d 550 (Fla.Dist.Ct.App.1988); *Lesko v. Lesko*, 184 Mich.App. 395, 457 N.W.2d 695 (1990); *Grund v. Grund*, 151 Misc.2d 852, 573 N.Y.S.2d 840 (N.Y.Sup.Ct.1991); *Hurd v. Hurd*, 69 Wash.App. 38, 848 P.2d 185 (1993). Although contrary views were expressed in other states, we find the views of the Maryland court in *Thomasian*, holding accrued leave is not marital property, to be most persuasive.

In *Thomasian*, Maryland found accrued holiday and vacation leave to be alternative wages, not deferred compensation like pensions and retirement programs. *Supra*, at 681. Because of the form of wages accrued leave took, it was found to be less tangible, more difficult to value, and more personal than pension and retirement benefits. *Id.* Accrued leave was differentiated from marital assets like pension and retirement benefits and held to be a nonmarital asset.

We just are not persuaded that accrued holiday and vacation entitlement is the same as a pension or retirement benefits, a form of deferred compensation; since it replaces wages on days when the worker does not work, it is really only an alternative form of wages. *MEA/AFSCME Local 519 v. City of Sioux Falls*, 423 N.W.2d 164, 166–67 (S.D. 1988). It need not be liquidated by the payment of cash; it may be, and often is, dissipated when the person entitled to do so, takes vacation or holiday time.

Thus, it is far from as tangible as, and much more difficult to value, not to mention more personal than, a pension or retirement benefits. Accordingly, we hold that accrued holiday and vacation entitlement is not marital property. *Thomasian* at 681. We adopt Maryland's approach to this issue and, therefore, affirm the trial court.

■ The fourth issue raised by Charles is the exclusion from marital property of approximately $5,000 withheld from Sheila's wages as withholding to offset her estimated 1997 income tax liability. The findings of the court indicated Sheila's actual liability was greater than the $5,000 withheld and was incurred as of December 31, 1997, the date of the decree dissolving the marriage. Because the amount withheld was totally offset by the actual 1997 liability and it was a debt owed as of the date dissolution was decreed, the $5,000 was not a marital asset to be divided by the parties. The court was therefore not clearly erroneous in excluding it from the total amount of marital assets available for division.

■ Finally, the last issue raised concerns $15,000 received by Charles from Anderson Insurance Company as payment of a debt. When Charles received the payment, he signed it back over to Anderson Insurance Company to apply toward his insurance obligation for 1998. Although this issue also concerns debt, the facts differ in that the $5,000 withheld for taxes was used to pay for a debt due as of the date dissolution was decreed and did not exceed the amount required to offset that liability. The use of the $5,000 is not a nonmarital one since it was used only for an actual debt incurred prior to or as of the decree. *See Culver v. Culver*, Ky.App., 572 S.W.2d 617, 620 (1978) (where the court found husband's purchase of real estate after decree dissolving marriage was nonmarital property and spouse had burden of proving property was purchased with marital assets). Charles's $15,000 payment was toward expenses due for a time period after the decree, making this use nonmarital. Marital property cannot be excluded when used to pay nonmarital obligations. The court's finding that the $15,000 was a marital asset to be divided was not clearly erroneous.

The judgment of the Daviess Circuit Court is affirmed.

ALL CONCUR.