Randy Joel OVERSTREET,
Appellant/Cross–
Appellee,

v.

Janet Darlene OVERSTREET,
Appellee/Cross–Appellant.

Nos. 2001–CA–002544–MR,
2001–CA–002627–MR.

Court of Appeals of Kentucky.

Dec. 12, 2003.

Discretionary Review Denied by
Supreme Court Oct. 13, 2004.

Before DYCHE, JOHNSON and SCHRODER, Judges.

*OPINION*

JOHNSON, Judge.

Randy Joel Overstreet has appealed and his former wife, Janet Darlene Overstreet, has cross-appealed from an order entered by the Hardin Circuit Court on October 24, 2001, which sustained in part and overruled in part the objections filed by Randy and Janet to the Commissioner's report concerning the division of the retirement benefits and accumulated annual leave and compensatory time acquired by Randy and Janet during their marriage. Having concluded that the trial court erroneously determined one of Randy's retirement accounts to be entirely marital property and that the trial court erred by refusing to award Janet a portion of the payment Randy received as compensation for the annual leave and compensatory time he had accumulated during the marriage, we reverse in part and remand. Having further concluded that the trial court did not abuse its discretion with respect to the other rulings challenged in this appeal, we affirm in part.

Randy and Janet were married on August 13, 1981. The marriage produced one child, who was over 18 years old at the time of the divorce. Before Randy and Janet married, Randy was employed as a dispatcher with the Kentucky State Police from November 1, 1973, until May 31, 1975, and he participated in the Kentucky Employees Retirement System (KERS). During this 19–month period, Randy accumulated approximately $400.00 in his KERS account. On June 1, 1975, Randy became employed as a trooper for the Kentucky State Police (KSP). Shortly thereafter, Randy withdrew the funds he

C. Mike Moulton, Elizabethtown, KY, for appellant/cross-appellee.

S. Marie Hellard, Tiffany L. Gash, Lawrenceburg, KY, for appellee/cross-appellant.

had accumulated as a member of the KERS and his account was rendered inactive. During his tenure as a KSP Trooper, Randy was a member of the State Police Retirement System (SPRS). During the marriage, Randy also established a 401(k) Plan and a 457 Plan with the Kentucky Public Employees Deferred Compensation Authority.

In 1983 Randy paid $659.00 to reactive his KERS account and to purchase the service time that he had lost by withdrawing the funds he had accumulated as a dispatcher.[1] On January 29, 1999, Randy rolled over $28,351.80 from his 401(k) Plan into his KERS account for the purpose of purchasing five years (60 months) of non-qualified service credit.

The Overstreets' divorce action was initiated in the Hardin Circuit Court on August 17, 1999, when Randy filed a petition for dissolution of marriage. On October 14, 1999, Randy applied for retirement benefits and selected the "life with 20 years certain" option on his KERS and SPRS accounts. Randy did not consult Janet prior to making this decision. In fact, on the retirement forms completed by Randy, he indicated that he was divorced.[2]

On October 31, 1999, Randy retired from the Kentucky State Police with 293 months of service as a KSP Trooper, 218 of those months having been acquired during his marriage to Janet.[3] At the time of his retirement, the balance in Randy's KERS account was $29,659.52 and the balance in his SPRS account was $79,390.36. Randy began receiving monthly benefits in the amount of $659.42 on his KERS account, which was based on the 80 months of service credit he had purchased, and monthly benefits in the amount of $3,313.64 on his SPRS account, which was based on 293 months of service plus 23 months of accrued sick leave.[4] At the time of his retirement, Randy also had accumulated several hundred hours of annual leave and compensatory time.

Janet was employed by the Franklin County Health Department during the marriage and she was also a member of the KERS. As of November 1, 1999, the value of Janet's KERS account was approximately $9,368.00, which was based on 130 months of service.

On November 9, 1999, the Hardin Circuit Court dissolved the Overstreets' marriage, but all other issues were reserved for future adjudication. In December 1999, Randy received approximately $23,000.00 as payment for the annual leave and compensatory time he had accumulated over the course of his career as a KSP Trooper.

After evidentiary hearings were held, the Domestic Relations Commissioner filed a report on July 11, 2001, recommending findings of fact and conclusions of law concerning, *inter alia*, the division of the retirement benefits and accumulated annual leave and compensatory time acquired by Randy and Janet during their marriage. In response to the written objections filed by Randy and Janet, the trial court entered an order on October 24, 2001, sustaining some of the objections and overruling the remainder. This appeal and cross-appeal followed.

1. As a result of this transaction, 20 months of service credit, instead of 19 months, were posted to Randy's KERS account.

2. The couple's daughter was named as the beneficiary on the retirement forms.

3. Randy currently serves as the Chairman of the Board of Trustees of the Kentucky Retirement Systems.

4. Randy accumulated 19 months of his 23 months of accrued sick leave during his marriage to Janet.

Randy claims in his appeal that the trial court erred (1) by determining his KERS account to be entirely marital property; (2) in calculating Janet's share of the SPRS account; (3) by not granting his request that Janet receive her share of his retirement accounts in the form of a lump-sum payment; and (4) by not granting him a portion of Janet's retirement account. Janet claims in her cross-appeal that the trial court erred (1) by not awarding her damages as a result of Randy's failure to consult with her prior to selecting the "life with 20 years certain" option on the KERS and SPRS accounts; and (2) by refusing to award her a portion of the $23,000.00 Randy received as payment for his accumulated annual leave and compensatory time.

■■■■■ We agree with Randy's contention that his KERS account should have been classified as non-marital property since his legal rights in the account were acquired prior to his marriage to Janet.[5] "Whether certain property is part of the marital estate subject to division presents a question of law that we decide without deference to the trial court's decision."[6] Randy's right to purchase service credit with the KERS arose out of his employment as a dispatcher with the Kentucky State Police from November 1, 1973, until May 31, 1975, before the marriage. Although Randy withdrew the funds he initially accumulated in his KERS account prior to his marriage to Janet, his right to participate in the retirement system was not terminated as a result of this transaction. Moreover, the fact that the value of Randy's KERS account was enhanced during the marriage through the use of marital funds does not alter its non-marital character.[7]

Accordingly, we reverse the trial court on this issue and remand this matter for the restoration of Randy's non-marital KERS account and for an appropriate division of the marital contributions made to that asset. The trial court shall divide the marital funds used to enhance the value of Randy's KERS account and the interest accrued as a result of the marital contributions to that account as marital property. As previously discussed, in 1983 Randy paid $659.00 to reactivate his KERS account and to purchase the service time that he had lost by withdrawing the funds he had accumulated during his employment as a dispatcher with the Kentucky State Police. Furthermore, on January 29, 1999, Randy rolled over $28,351.80 from his 401(k) Plan into his KERS account. At the time of his retirement, the balance in Randy's KERS account was $29,659.52. On remand, the trial court should divide the marital interest in Randy's KERS account of $29,659.52 between the parties. However, Janet's marital share in Randy's KERS account will have

5. *Cf. Poe v. Poe,* Ky.App., 711 S.W.2d 849, 852–57 (1986) (contractual rights to portion of pension benefits acquired during the marriage held to be marital property).

6. *Chen v. Chen,* 142 Wis.2d 7, 416 N.W.2d 661, 663 (1987).

7. *See* KRS 403.190(2)(e), which states, in relevant part, as follows:

(2) For the purpose of this chapter, marital property means all property acquired by either spouse subsequent to the marriage except:

. . .

(e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

It necessarily follows that property acquired prior to marriage retains its non-marital character even if marital funds are used to enhance the value of that property. When the value of non-marital property is enhanced through the use of marital funds, only the increase in value of the property and the funds contributed in pursuit of that increase are subject to division as marital property.

to be reduced by any monthly retirement benefits she has already received from Randy's KERS account.

◼ Randy next contends that the trial court erred in calculating Janet's share of his SPRS account. It is well settled that issues pertaining to the division of marital property upon divorce are reviewed under an abuse of discretion standard.[8] "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made."[9] " 'A [ ] court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an[ ] erroneous legal standard.' "[10]

The trial court determined that Janet was entitled to receive 37.5% of Randy's SPRS account. The trial court arrived at this figure by dividing the number of service months Randy accumulated during the marriage including accrued sick leave, which totaled 237 months, by the number of service months he acquired during his tenure as a state trooper including accrued sick leave, which totaled 316 months.[11]

Randy contends Janet is only entitled to receive 34.495% of his SPRS account.[12] Randy arrives at this percentage by dividing the 218 service months he accumulated during the marriage by 316 months, which consists of the 293 service months he acquired during his tenure as a KSP Trooper plus his 23 months of accrued sick leave. While Randy accrued 19 months of the

sick leave during his marriage, he contends that the trial court erred by adding these 19 months to the 218 service months accumulated during the marriage for a total of 237 months. At the same time, Randy argues that his total sick leave of 23 months should be added to his 293 service months for a total of 316 months. We find no merit whatsoever to this approach. The trial court's calculation of Janet's share of the SPRS account does not constitute an abuse of discretion. The trial court's calculation properly considered the marital and non-marital aspects of Randy's accumulated service months and sick leave and that calculation resulted in a fair and accurate division of the SPRS account.

◼ Randy further contends that the trial court erred by not granting his request that Janet receive her share of his SPRS account in the form of a lump-sum payment. We disagree. As the trial court noted in its order dated October 24, 2001:

> Basically, [Randy] wants [Janet] to receive her percentage in his retirement accounts based upon the actuarial value at the time of divorce rather than allowing [Janet] to realize the benefit of payment over a period of time. The basic unfairness of this position is apparent. [Randy] wants to impose upon [Janet] a choice he himself would not and, in fact, did not make. The law does not require the Court to allocate the retirement ac-

8. *See Davis v. Davis*, Ky., 777 S.W.2d 230, 233 (1989).

9. *Romstadt v. Allstate Insurance Co.*, 59 F.3d 608, 615 (6th Cir.1995) (citing *Southward v. South Central Ready Mix Supply Corp.*, 7 F.3d 487, 492 (6th Cir.1993)).

10. *Romstadt*, 59 F.3d at 615 (quoting *Southward*, 7 F.3d at 492).

11. 237 divided by 316 equals 75%, half of which equals 37.5%.

12. As previously discussed, of the 293 total months of service Randy accumulated as a KSP Trooper, 218 of those months were accumulated during his marriage to Janet. In addition, Randy accumulated 23 months of accrued sick leave during his tenure as a KSP Trooper. Randy argues that 218 should be divided by 316 (293 + 23) in order to arrive at the 68.99% marital portion of the account, half of which equals 34.495%.

counts as [Randy] wants them to be allocated.

It is well settled that [t]he trial court has wide discretion in dividing marital property[.][13] The trial court did not abuse its discretion by awarding Janet her share of Randy's SPRS account in the form of monthly payments as opposed to a lump-sum payment.

Randy also claims the trial court erred by not granting him a portion of Janet's retirement account. Randy insists that the trial court was required to award him a portion of Janet's retirement account pursuant to KRS 403.190(4), which states, in relevant part, as follows:

> If the retirement benefits of one spouse are excepted from classification as marital property, or not considered as an economic circumstance during the division of marital property, then the retirement benefits of the other spouse shall also be excepted, or not considered, as the case may be. However, the level of exception provided to the spouse with the greater retirement benefit shall not exceed the level of exception provided to the other spouse.

The crux of Randy's argument appears to be based on his contention that the trial court failed to consider Janet's retirement account as an economic circumstance during the division of marital property. A clear reading of the trial courts order, however, indicates that it did in fact consider Janet's retirement account as an economic circumstance when dividing the parties marital property. The order entered by the trial court on October 24, 2001, states, in pertinent part, as follows:

> It must be kept in mind that the trial court has broad discretion in the disposition of property upon divorce. That mandate includes the obligation to "divide the marital property without regard to marital misconduct in just proportions considering all relevant factors." KRS 403.190(1). The evidence reveals that [Randy] will have an income which is a number of times greater than that of [Janet].... A fair division is realized [ ] by [Janet] being awarded all of her own retirement account, the value of which pales in comparison to [Randy's] accounts.

Thus, the trial court properly considered the relevant factors in dividing Janet's retirement account.

■ We now turn to the arguments advanced by Janet in her cross-appeal. Janet first contends that the trial court erred by not awarding her damages and attorney's fees as a result of Randy's failure to consult with her prior to selecting the "life with 20 years certain" option on the KERS and SPRS accounts. Janet claims that under the option selected by Randy she will not continue to receive the balance of the benefits due her if Randy dies within the 20–year payment period.[14] While we do not dispute this contention, Janet has failed to cite any authority whatsoever indicating that Randy was required to inform her of his retirement decision. The evidence supports the trial court's finding that the right to choose a retirement option belongs solely to the member. Thus,

---

13. *Davis*, 777 S.W.2d at 233.

14. *See* KRS 61.635(7), which states, in relevant part, as follows:

Life with twenty (20) years certain. The member less than age sixty-two (62) may elect to receive a monthly retirement allowance during his lifetime which shall guarantee payments for two hundred and forty (240) months. If the member dies before receiving payments for two hundred and forty (240) months, his beneficiary shall receive the remaining payments for the duration of the two hundred and forty (240) months period.

even if Janet had been informed of Randy's decision, she had no legal right to force him to choose a different option. The trial court did not abuse its discretion by refusing to award Janet damages.

■ Janet next contends that the trial court erred by refusing to award her a portion of the $23,000.00 Randy received as payment for his accumulated annual leave and compensatory time. The trial court concluded that the $23,000.00 Randy received as payment for his accumulated annual leave and compensatory time was not marital property subject to division pursuant to *Bratcher v. Bratcher.*[15]

While the Court in *Bratcher* concluded that the accrued sick leave and vacation benefits at issue in that case were not subject to division as marital property,[16] *Bratcher* did not hold that accrued sick leave and vacation benefits are always non-marital. The appellee in *Bratcher*, Sheila Bratcher, had yet to retire and at the time of her divorce she had approximately $10,800.00 worth of accrued sick leave and $2,800.00 worth of accrued vacation leave as a result of her employment at Owensboro Mercy Health Systems. Sheila was entitled to compensation for any accrued vacation leave in the event of her retirement or termination of employment whereas any unused sick leave was subject to forfeiture. Sheila's former husband, Charles Bratcher, claimed her accrued sick leave and vacation leave constituted marital property subject to division.[17]

After surveying the law from several jurisdictions that had addressed the issue, this Court concluded that accrued leave is different from pension or retirement benefits, which are subject to division as marital property,[18] due to the fact it is "much more difficult to value, not to mention more personal than, a pension or retirement benefits."[19] In arriving at this conclusion, this Court relied on a Maryland case, *Thomasian, supra*, that treated accrued holiday and vacation benefits as an alternative form of wages, since it replaces wages on days when the worker does not work.[20] This Court, like the Maryland Court, focused on the difficulty of valuing accrued leave time and the fact that an employee might not actually collect the benefits.[21] Since Sheila had no present right to receive her accumulated vacation leave, and no certain right to ever receive all of her accumulated sick leave, the Court in *Bratcher* concluded that the accumulated leave could not be deemed to be a marital asset subject to division.

The factual scenario present in *Bratcher* differs markedly from that of the case *sub judice*. Unlike the accrued sick leave and vacation leave in *Bratcher*, the annual leave and compensatory time that Randy received upon his retirement was not difficult to value. Randy received approximately $23,000.00 as payment for the annual leave and compensatory time that he accumulated over the course of his career as a KSP Trooper. Moreover, Randy's right to receive compensation for his accrued annual leave and compensatory time

15. Ky.App., 26 S.W.3d 797 (2000).

16. *Id.* at 800–01.

17. *Id.* at 798–99.

18. *See Jones v. Jones,* Ky., 680 S.W.2d 921 (1984) (military retirement benefits); and *Poe,* 711 S.W.2d at 852–57 (nonvested pension plan).

19. *Bratcher,* 26 S.W.3d at 801 (citing *Thomasian v. Thomasian,* 79 Md.App. 188, 556 A.2d 675, 681 (1989)).

20. *Id.* (citing *Thomasian,* 556 A.2d at 681).

21. *Bratcher,* 26 S.W.3d at 800–01.

became certain on October 31, 1999, the date he retired. As previously discussed, the appellee in *Bratcher* had yet to retire. Thus, her accrued sick leave and vacation benefits were subject to future dissipation. This distinction was fundamental to the result reached in *Bratcher.* Simply stated, the case *sub judice* is distinguishable from *Bratcher.*[22] Accordingly, we reverse the trial court on this issue as well. On remand, Janet's marital interest in the annual leave and compensatory time accumulated by Randy during the marriage should be divided as a part of the trial court's division of the marital property.

Based upon the foregoing reasons, the order of the trial court entered on October 24, 2001, is affirmed in part, and reversed in part, and this matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

---

**22.** We believe that our holding herein addresses the concerns raised in Graham and Keller's Kentucky Practice Series, wherein it was stated: "The *Bratcher* outcome is not necessarily unfair, but the court's reasoning may come back to haunt it when the case arises in which an employee has significant accrued leave acquired during the marriage, can receive money compensation for that leave, and is about to retire from work with the leave an important part of a retirement package." 15 Graham & Keller, *Kentucky Practice* § 15.54 (1997 & Supp.2002).