IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 9, 2013

# DEBRA LYNN LLOYD v. HUSTON FOLEY LLOYD

**Appeal from the Chancery Court for Cheatham County**
**No. 14238    Donald Paul Harris, Chancellor**

---

**No. M2012-02240-COA-R3-CV - Filed April 24, 2014**

---

Husband in divorce proceeding appeals numerous issues relating to the trial court's administration of the trial and valuation and division of marital property. Finding no error, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, M. S., P. J., and FRANK G. CLEMENT, J., joined.

Huston Foley Lloyd, Tiptonville, TN, Pro Se.

Jennifer Noe, Ashland City, Tennessee, for the appellee, Debra Lynn Lloyd.

## OPINION

The parties to this action were married in 1978; they are the parents of one child, who had reached the age of majority at the time of trial. Debra Lloyd ("Wife") instituted suit to terminate the marriage on the grounds of irreconcilable differences and inappropriate marital conduct on May 13, 2009. Shortly after the suit was filed, Huston Lloyd ("Husband") pled guilty to first degree murder of Kimberly Wyatt and first degree felony murder of Sarah Wyatt and was sentenced to life without parole on each conviction; he is currently incarcerated at Northwest Correctional Facility, Tiptonville, Tennessee.

The trial of the divorce action was held on July 11 and 12, 2012. Wife was present in court and represented by counsel; Husband was not represented and participated in the trial by phone. Also present was counsel for Jeremy Wyatt, the surviving spouse of Kimberly Wyatt and father of Sarah Wyatt, who had filed a wrongful death suit against Husband and recovered a judgment in the total sum of $12,000,000.00; Mr. Wyatt had been allowed to

intervene to participate in discovery with regard to Husband's assets and otherwise to protect the interest of the judgment creditors. On September 10 the court entered the Amended Final Decree of Divorce, granting Wife a divorce on the ground of inappropriate marital conduct and valuing, dividing and distributing the marital property and debts. Husband duly filed a motion to amend the judgment and a motion for a new trial, both of which were denied.

Husband appeals, raising issues relating to: the manner in which this proceeding was conducted; the valuation of the marital property; the introduction of certain exhibits; the court's denial of his motion to appoint counsel; and the assessment of costs to him.

## STANDARD OF REVIEW

In review of a divorce proceeding, the trial court's findings of fact "are presumed to be correct unless the evidence preponderates otherwise." *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744 (Tenn. 2002) (citing Tenn. R. App. P. 13(d)). Questions of law are reviewed *de novo* without the presumption of correctness. *See id*. at 745 (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)). Mixed questions of law and fact are reviewed *de novo* with no presumption of correctness, with the appellate court having "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Id*. at 745 (citing *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995)).

## DISCUSSION

### I. PROCEDURAL MATTERS

Husband contends that the court's rulings on motions which he filed denied him due process, access to the court, and equal protection of laws by failing to allow him to participate "fully, fairly and completely in [the] final hearing" and that the court committed reversible error when it dismissed motions which had not been set for hearing.

As we address Husband's argument, we are mindful of the standards set forth in *Hessmer v. Hessmer*, 138 S.W.3d 901 (Tenn. Ct. App. 2003) for trial courts, and by extension appellate courts, when considering cases in which litigants are incarcerated and appearing pro se:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to

2

a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers. Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903–04 (Tenn. Ct. App. 2003) (internal citations omitted).

Throughout the course of this proceeding, Husband was imprisoned and was not represented by counsel; he filed an excessive number of motions, letters and other pleadings. On May 10, 2012, the court entered an order on Husband's "Ex Parte Motion to Cease and Desist"; after disposing of the particular motion, the court dismissed "all pleadings filed by the Husband not heretofore disposed of."[1] In the Amended Final Decree of Divorce, the court stated:

The Husband moved during this proceeding to have the Court rule on the Motions filed by him previously which were never set by the Husband on the Court's docket. The Court explained to the Husband that it was his responsibility to place the Motions on the Court's docket and that he had not done so therefore the Motions were dismissed.

We have reviewed the motions and other correspondence and observe that several motions contained a notice of hearing, while others had a blank for the date of hearing or no notice of hearing; as noted by the trial court, most of the motions were not set for hearing. Each court has its own procedure for disposing of motions and it is the litigant's responsibility to know and comply with that procedure. In one of his letters to the clerk of the trial court Husband correctly notes that the rules for Cheatham County Chancery Court are not in the Local Rules of Court compiled by West Publishing Company; this fact,

---

[1] The record on appeal reflects that Husband filed thirty-one motions, pleadings, letters or other documents between August 2009 and the end of March 2012.

however, does not excuse Husband from the responsibility to set the motions for hearing. As evidenced by the fact that several of his motions were set for hearing, Husband was aware that motions needed to be set; he failed to do so as to the majority of his motions. We find no error in the court's dismissal of motions which were not set for hearing in accordance with the rules of court.

Two motions raising issues which could be construed to be constitutional in nature and which were denied are Husband's motion to have counsel appointed for him and his motion to participate in a status conference and the trial in person, by teleconference, or by video conference.

In *Knight v. Knight*, 11 S.W.3d 898, 900 (Tenn. Ct. App. 1999), a divorce proceeding, this court considered the same issues presented by Husband herein. We held that the trial court did not err in failing to appoint counsel for the incarcerated defendant, noting that there is no absolute right to counsel in a civil case; the Sixth Amendment right to counsel is limited to criminal prosecutions. *Knight*, 11 S.W.3d 898, 900 (Tenn. Ct. App. 1999) (citing *Lyon v. Lyon*, 765 S.W.2d 759, 763 (Tenn. Ct. App. 1988); *In re Rockwell*, 673 S.W.2d 512, 515 (Tenn. Ct. App. 1983)). We adhere to the holding in *Knight* with regard to this issue.

With respect to the husband's contention that the trial court erred in denying his motion to be transported to the divorce hearing, the court in *Knight* discussed Tenn. Code Ann. § 41-21-304(a) as well as several cases addressing the issue; the court held that whether to allow a prisoner/litigant to be physically present in court is within the sound discretion of the trial court, which should be exercised after balancing the interest of the prisoner against the interests of the other parties and the state authorities who have custody of the prisoner. *Knight*, 11 S.W.3d at 903.[2]

---

[2] The *Knight* court further instructed:

Some of the factors to be considered in balancing the respective interests were set forth in *Stone v. Morris,* 546 F.2d 730, 735–36 (7th Cir.1976):

In making his determination the district judge should take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition. [citation omitted]

*Knight,* 11 S.W.3d at 903–04.

4

A review of pertinent orders in the record shows an order entered September 21, 2010, denying Wife's motion for default judgment, stating that "Defendant/Husband is in prison and therefore must be afforded the right to be present for a final hearing in this matter by either deposition or phone conference," and an order entered March 14, 2011, denying Husband's Motion to Participate In Status Hearing VIA Tele-Conference or Video Conference, stating in part "the [Court] finds due to lack of facilities this motion is hereby Denied." The record also shows that Husband participated in extensive discovery and discovery related motions and correspondence, both as proponent and respondent, and filed discovery materials, including exhibits relating to marital assets, as part of the court record. Viewing the record as a whole, we see no abuse of the court's discretion in not permitting Husband to participate in a status conference by phone or video-conference.

Similarly, considering the factors set forth in *Knight*, we do not find an abuse of discretion in not allowing Husband to attend the trial in person. Husband admitted in his answer that he was guilty of inappropriate marital conduct and Wife was awarded the divorce on that basis. The issues which were tried related to the valuation and division of the marital estate and debts. Husband identified and valued the marital assets in various pleadings, discovery responses, and exhibits which he filed and participated in the trial by phone; he testified and cross-examined Wife.[3] The record shows that, even though Husband's motion was denied, the court took appropriate measures, given the circumstances, to insure that he had an opportunity to participate in the proceedings and to be heard.[4] Husband made his arguments in writing as instructed by the court and it is clear that the court took those into account in addressing the issues before it.

_____

[3] In the final decree the court valued the marital assets at $235,598.32 and the debts at $76,918.87, leading to the sum of $158,678.45, as equity in the marital estate. Trial Exhibit 10 contained Wife's valuation of the marital assets and liabilities. The values set by the court for the parties' vehicles and household contents are higher than those set forth in the exhibit; the court acknowledged that it accepted Wife's values for the marital property "with a few exceptions." The Statement of the Evidence approved by the trial court shows that both parties testified as to their vehicles and Husband submitted a list of assets which was introduced as Exhibit 13.

[4] The Statement of the Evidence reflects that the court admonished Husband on numerous occasions regarding his questioning of Wife and that when the admonishments were not successful, the court terminated Husband's presentation of evidence. "The trial judge has wide discretion in his conduct of the trial." *Marress v. Carolina Direct Furniture, Inc.*, 785 S.W.2d 121, 129 (Tenn. Ct. App. 1989) (*citing Cordell v. Ward Sch. Bus. Mfg., Inc.,* 597 S.W.2d 323 (Tenn. Ct. App. 1980); *Wilson v. Maury Cnty. Bd. of* Ed., 302 S.W.2d 502 (1957)). We find no reason in the record before us to question the court's ruling in this regard.

## II. BIAS OF THE TRIAL COURT

Citing various unfavorable rulings, Husband contends that the trial court was biased against him because he is incarcerated and that the court violated Canon 2 of the Code of Judicial Conduct, Tenn. Sup. Ct. R. 10, requiring the judge to perform the duties of office impartially, in other respects.

We do not take these allegations lightly. We have already held that Husband's constitutional claims are without support in the record and we similarly do not find any evidence in the record from which to conclude that the court was biased against Husband or in favor of Wife. To the contrary, our studied review of the record shows that each judge assigned to this case was abundantly considerate of the rights of Husband, as an incarcerated litigant in a divorce action, and performed the court's responsibilities consistent with applicable law and procedure.[5] Husband's allegations of bias are premised solely upon his disagreement with what he considers were unfavorable rulings; while disagreement with the disposition of his various motions and the marital estate is not objectionable, making unsupported allegations of bias is.[6]

## III. IDENTIFICATION, VALUATION AND DIVISION OF MARITAL ASSETS

Husband takes issue with the court's identification, valuation, and division of the marital assets, contending that the court erred in accepting the testimony of Wife as to the identity of the marital assets and in awarding her "all of the parties' marital assets."

---

[5] The division of the parties' marital estate begins with the classification of the property as separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). Once property has been classified as marital property, the court should place a reasonable value on property that is subject to division. *Edmisten v. Edmisten*, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003). When valuation of evidence is conflicting, the court may place a value on the property that is within the range of the values presented. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997). Once the marital property has been valued, the trial court is to divide the marital property in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller*, 81 S.W.3d at 775. Trial courts have wide latitude in fashioning an equitable division of marital property, *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983).

[6] As an example of such an unsupported allegation of bias, in his brief Husband injects matters related to the parties' disabled adult daughter and argues that the court "is to protect the estate of the incompetent, mentally retarded adult child." The circumstances of the parties' daughter was not at issue in this case and the trial court had no subject matter jurisdiction to adjudicate any issue related thereto. The fact that the court made no ruling relative to the daughter demonstrates that the court was properly performing its duty, not that it was biased against Husband. For the same reason, Husband's contention in his brief that the trial court erred in not ruling on his request to visit his daughter presents no issue for our consideration.

6

Decisions regarding the value of marital property are questions of fact, *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998); thus, they are not second-guessed on appeal unless they are not supported by a preponderance of the evidence. *Smith v. Smith*, 93 S.W.3d 871, 875 (Tenn. Ct. App. 2002). Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c). [7] *Kinard*, 986 S.W.2d at 230. Dividing marital property in an equitable manner does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). This court accords great weight to the trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

---

[7] Tenn. Code Ann. § 36-4-121 (c) provides:

In making equitable division of marital property, the court shall consider all relevant factors including:
(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role:
    (B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

As noted above, there is factual support in the record for the property the court determined was marital property and the values it placed upon the same.[8] While Husband disputes the values, the evidence does not preponderate against the court's determination.

Husband does not specifically contest the division of marital property but, rather, argues that, since he did not sign a marital dissolution agreement, the divorce should not have been awarded under Tenn. Code Ann. § 36-4-103, governing irreconcilable differences divorces. This divorce was granted to Wife on the basis of inappropriate marital conduct, however, and a signed marital dissolution agreement was not required. Husband does not argue that the division of the marital property was not done in accordance with Tenn. Code Ann. § 36-4-121(c). We have reviewed the evidence and the decision of marital property is in accordance with applicable law.

## IV. INTRODUCTION OF EXHIBITS

Husband contends that Wife's introduction of exhibits 2, 3, 4, 5, 6, 8, 9, 10, 11 and 14[9] was improper and deprived him of due process and equal protection of laws because Wife "did not submit those documents to appellant prior to the final hearing so he could rebut or dispute the information in those exhibits." He sets forth no legal basis requiring the exclusion of the exhibits as evidence, rather he insists that the admission of the exhibits continued the alleged pattern of bias and unfairness shown to him by the trial court.

A trial court's ruling on the admissibility of evidence is within the sound discretion of the court and we review issues regarding the admission of evidence under the abuse of discretion standard. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. Appt. 2001). A discretionary decision will be set aside only when the deciding court applied incorrect legal standards, reached an illogical conclusion, decided the case on a clearly erroneous assessment

---

[8] *See* footnote 3 and related text.

[9] Exhibit 2 is a certified copy of the judgment wherein Husband pled guilty to felony murder; exhibit 3 is the original of a warranty deed conveying property in Flint, Michigan, to Husband and Wife; exhibit 4 is a copy of a warranty deed conveying three parcels of property in Dickson County, Tennessee, to Husband and Wife; exhibit 5 is a copy of a promissory note in the amount of $17,417.36 executed by Husband (by Wife pursuant to his power of attorney) and Wife and payable to Jack D. Lowery; exhibit 6 is a deed of trust securing the note at exhibit 5; exhibit 8 is a copy of a warranty deed conveying property located at 866 Mathew Court, Kingston Springs, Tennessee, to Husband and Wife; exhibit 9 is a copy of a quitclaim deed wherein Husband and Wife convey a 30% interest in the Kingston Springs property to their daughter, Krystle Lloyd; exhibit 10 is Wife's asset and liability statement; exhibit 11 is Wife's income and expense statement; exhibit 14 is a certified copy of an order entered in the Circuit Court for Cumberland County, Tennessee, granting Jeremy Wyatt and Karon Wyatt judgment against Husband totaling $12,000,000.00.

of the evidence, or employed reasoning that will cause injustice to the complaining party. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008) (citations omitted).

The exhibits were material to the matters before the court, particularly the identification of marital assets and marital debt, and were properly identified and introduced into the record; Husband wholly fails to articulate a valid reason for them to be excluded. This argument is without merit.

## V. DISSIPATION OF MARITAL ASSETS

The trial court held that Husband dissipated marital assets in the total sum of $85,000.00, $75,000.00 of which was due to legal fees incurred in the defense of his criminal charges, and $10,000.00 for legal fees incurred by Wife as a result of the manner in which Husband conducted his defense of this action.[10] While Husband acknowledges the expenditures, he contends that the court's holding in this regard is "completely wrong, arbitrary and prejudiced."

The determination of whether a dissipation of marital assets occurred is a factual inquiry. *Altman v. Altman*, 181 S.W.3d 676, 682 (Tenn. Ct. App. 2005). Dissipation of assets requires a showing of intentional, purposeful, and wasteful conduct. *Id*. The party alleging a dissipation of marital assets has the burden of persuasion and the initial burden of production. *Id*. "After the party alleging dissipation establishes a prima facie case that marital funds have been dissipated, the burden shifts to the party who spent the money to present evidence sufficient to show that the challenged expenditures were appropriate." *Id*. (citing *Wiltse v. Wiltse*, 2004 WL 1908803, at *4 (Tenn. Ct. App. Aug. 24, 2004); *Bratcher v. Bratcher*, 26 S.W.3d 797, 799 (Ky. Ct. App. 2000); *Turner v. Turner*, 809 A.2d 18, 52 (Md. 2002); *Anderson v. Anderson*, 514 S.E.2d 369, 380 (Va. Ct. App. 1999)).

---

[10] With respect to the $10,000.00, the final decree states:

The Court further took into account the case at hand wherein the Husband did not contest that he was guilty of inappropriate marital conduct, and has no real interest in the proceeds of the lawsuit and yet he has filed some 47 motions, most of which he did not even place on the docket, when he does not stand to ever see a penny from this lawsuit due to the judgment that has been entered against him in the amount of $12,000,000.00 out of Cumberland County, Tennessee. The Court found that Husband's actions in this suit have greatly increased the amount of attorney's fees that have been incurred by Ms. Lloyd with nothing to accomplish. The Court found that Mr. Lloyd dissipated an additional $10,000.00 in marital assets by his actions in the case at hand.

The evidence does not preponderate against the court's determination that Husband dissipated $85,000.00 of marital funds. The $75,000.00 incurred in the defense of Husband's criminal case was based on his illegal conduct that was intentional, purposeful and had produced no benefit to his family. With respect to the $10,000.00 the court determined that, given the facts of the divorce case, including Husband's acknowledgment of the grounds for divorce, his incarceration, and the wrongful death judgment entered against him, the numerous motions he filed-which had to be defended by Wife-caused her to unnecessarily expend marital funds; this finding is supported by the record.[11] As required by the procedure set forth in *Altman*, Husband has failed to introduce any proof that the $85,000.00 was an appropriate expenditure of marital funds.

## CONCLUSION

For the foregoing reasons the judgment of the trial court is affirmed in all respects.

_____
RICHARD H. DINKINS, JUDGE

---

[11] Husband argues in regard to the $10,000.00:

> [H]e was not the one who filed the divorce, and should not be held as the one to be taxed for it since the appellant was not able to fairly, fully, and completely participate in his defense, the trial court was arbitrary towards appellant, nor did the appellee through counsel submit the requested discovery . . . then the appellant filed with the trial court a motion for pretrial discovery conference, but the court ignored.

As noted earlier, we have reviewed the record in detail and find no arbitrariness, impropriety or bias in the court's handling of this case. In making its ruling, the court did not penalize Husband for the manner in which Husband represented himself; rather the court considered the practical effect of Husband's actions on the marital estate and determined that marital assets were dissipated.