# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 27, 2012 Session

## LYNETTE ROONEY (POLLAN) v. EDWARD S. POLLAN

**Appeal from the Chancery Court for Williamson County**
**No. 35203      Jeffrey S. Bivins, Judge**

**No. M2011-01896-COA-R3-CV - Filed: July 3, 2012**

Wife appeals the trial court's division of marital property and award of alimony among other issues. The trial court granted Wife a divorce on the ground of Husband's inappropriate marital conduct. Wife was awarded 51% of the marital assets and Husband received 49%. Wife was awarded $5,000 month in alimony in futuro until she reached the age of 65, at which time the amount would be reduced to $2,000 until Wife's death or remarriage. Wife contends that the trial court erred in its determination as to the division of marital property, its award of alimony, its denial of her request for an additional $170,000 as alimony in solido due to Husband's alleged dissipation of assets, its denial of Wife's request that Husband pay her medical insurance following the end of an eight-year employment agreement with Husband's company, and its denial of her request for attorney's fees and expert witness fees in the amount of $115,528.88. For his part, Husband contends the trial court made a mathematical error regarding the parties' 2010 tax liability. We affirm the trial court in all respects except for the tax liability and remand the issue of the parties' 2010 tax liability. Although Wife does not challenge this issue, we are unable to determine the correct amount; thus, we remand this issue for the court to determine whether a mathematical error exists and, if so, to modify the decree accordingly.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Russ Heldman and Joanie Abernathy, Franklin, Tennessee, for the appellant, Lynette Rooney (Pollan).

Donald Capparella, Nashville, Tennessee, for the appellee, Edward Simon Pollan.

# OPINION

Husband and Wife married in 1983 and have two children, neither of which are minors. Husband is President and one-half owner of NCC Business Services of America, Inc. ("NCCBSA"), a third-party debt collection agency. Wife, who originally helped start NCCBSA, became a homemaker after the birth of the parties' children. Wife suffers from degenerative disk disease among other back problems.

Wife filed an initial complaint for divorce on October 24, 2008. Following the filing of the complaint, the trial court entered a temporary restraining order prohibiting either party from dissipating assets. An Agreed Order was entered in April 2010 permitting Wife to charge up to $2,500 per month on the Bank of America, American Express, and Optima credit cards and requiring Husband to make at least the minimum payments on the cards pending further orders of the court. Following a protracted period of litigation with numerous motions and agreed orders filed in the interim, Wife filed an Amended Complaint on July 15, 2010, adding Husband's alleged inappropriate marital conduct as a ground. More litigation ensued.

An agreed order entered on March 23, 2011, stipulated that Wife would be awarded a divorce based upon Husband's inappropriate marital conduct and that all of Wife's medical records would be introduced in their entirety at the hearing.

On March 25, 2011, prior to the beginning of the final hearing, the parties announced an agreement regarding Husband's 50% interest in NCCBSA ("the Stock Settlement Agreement"); the agreement was limited to this one marital asset. Pursuant to the agreement, Husband would retain all of his shares of stock in the company and "hold Wife harmless . . . for any debt or taxes associated with this business or stock." It further provided that if NCCBSA was sold she would receive 50% of the after tax proceeds, in an amount no less than $692,000 and no more than $1,050,000, and if the business was not sold in eight years, then Wife would receive $1,050,000 payable as a $555,000 cash lump sum and $285,000 paid out over 15 years with a 10 year call at 3% interest. If the business was not sold after four years, Wife would receive $277,500 as an advance against the $555,000 payment. The agreement further provided that Wife would be a full time employee of NCCBSA for 8 years, commencing immediately, earning $50,000 per year and she would receive full employee benefits, including health insurance.

Following the announcement of the Stock Settlement Agreement, which included Wife's eight year employment agreement with NCCBSA, the case proceeded to trial concerning the allocation of the rest of the marital estate, Wife's request for alimony and

COBRA insurance, and other issues. The case was tried on March 25 and 29, 2011, after which the court took the matter under advisement.

The trial court entered the Final Judgment on July 26, 2011. In the judgment, Wife was awarded a 2008 Lexus, half the value of the marital residence, 37.8% of Husband's 401(k), half the IRA, and half the parties' checking account and furniture. Husband received a 2005 Nissan, a Honda four-wheeler, the cash value of his life insurance policy, half the value of the marital residence, 62% of his 401(k), half the IRA, and half of the parties' checking account and furniture. The trial court divided the marital debt as follows: Wife was assigned half the American Express credit card, half the Macy's credit card, half the 2010 tax liability, half of Husband's business loan, and $13,488 of the Bank of America credit card. Husband was assigned: half the business loan, $3,488 of the Bank of America credit card, and the entire $74,000 stock purchase debt. The final net division of marital assets was an award of $107,641 to Wife and $106,814 to Husband; or 51% to Wife and 49% to Husband.

The trial court awarded Wife alimony in futuro of $5,000 per month beginning in June 2011, which would be reduced to $2,000 per month upon Wife reaching 65 years of age.[1] Wife was also awarded a lump sum of $5,000 for moving expenses. The trial court based the award of alimony upon a finding that Husband's annual income was $534,288, or $44,524 a month. The trial court also considered Wife's salary of $50,000 per year for occasional consulting work with NCCBSA pursuant to the Stock Settlement Agreement. Husband was ordered to maintain a $1,000,000 life insurance policy to secure the alimony award. The trial court denied Wife's request for Husband to pay Wife's COBRA benefits if she lost her health insurance through NCCBSA and denied Wife's request for $170,000 in alimony in solido based upon her claim that Husband dissipated marital assets. The trial court awarded Wife $50,000 of alimony in solido for her attorney's fees.

Following the entry of the Final Judgment, the marital residence was sold and the trial court entered an order in which the proceeds of $121,483.87 were split equally between the parties. Additionally, the trial court reduced the previous $50,000 award of attorney's fees to Wife to $40,322.53 because of Husband's payment of one-half of the attorney's fees paid to Wife's previous attorney pursuant to an attorney's lien. Wife filed a motion to alter or amend the judgment, which the trial court denied. Wife filed a timely appeal.

---

[1]This was offset by $1,000 until the sale of the marital residence.

## ANALYSIS

Wife raises numerous issues on appeal challenging, *inter alia*, the division of the marital estate, the award of alimony, denying her request for COBRA insurance, and the amount of the award for her attorney's fees. We shall address each issue in turn.

## I. DIVISION OF MARITAL ESTATE

Wife raises several issues regarding the trial court's division of marital property. Wife contends that the trial court erred in including three debts owed to NCCBSA in the division of the marital estate and ordering Wife to pay a portion of that debt. Wife also contends that the trial court erred in ordering her to pay $38,968 of credit card debt and including the credit card debt in the division of marital property. Wife also contends generally that the division of marital property is inequitable to Wife and requests an additional award of alimony in the amount of $60,000.

The division of marital property involves the distribution of both marital assets and marital debts. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002) (citing *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App.1998); *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App.1989)). "Trial courts have not completely divided a marital estate until they have allocated both the marital property *and* the marital debt." *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007) (citing *Robertson*, 76 S.W.3d at 341; *Hopkins v. Hopkins*, No. M2002–02233–COA–R3–CV, 2003 WL 21462971, at *6 (Tenn. Ct. App. June 25, 2003); *Anderton*, 988 S.W.2d at 679) (emphasis added). The division of the parties' marital estate begins with the classification of the property as separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). Once the marital property has been valued, the trial court is to divide the marital property in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller*, 81 S.W.3d at 775. A division of marital property in an equitable manner does not require that the property be divided equally. *Robertson*, 76 S.W.3d at 341. "Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c)." *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). "Trial courts have wide latitude in fashioning an equitable division of marital property." *Id*.

Marital debt is also subject to equitable distribution. *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003) (citing *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 243 (Tenn. Ct. App.1995); *Mondelli*, 780 S.W.2d at 773). "'[M]arital debts' are all debts incurred *by either or both spouses* during the course of the marriage up to the date of the final divorce hearing." *Id*. (emphasis added). In determining the equitable distribution of marital debt, Tennessee courts

should consider the following four factors set forth in *Mondelli v. Howard*: (1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt. *Id*. (citing *Mondelli*, 780 S.W.2d at 773).[2] This court accords great weight to the trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tennessee Code Annotated § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

## A. Debts Owed to NCCBSA

Wife takes specific issue with the inclusion of three debts within the marital property classification and the trial court's order for her to pay a portion of these debts. First, she contends the trial court erred in including $245,866 dollars of debt in the division of marital property, which she argues was resolved in the Stock Settlement Agreement. This argument is based on the provision in that agreement that "[Husband] will hold [Wife] harmless and indemnify her from any responsibility for any debt or taxes associated with this business or stock." The figure of $245,866 consists of a $152,866 loan from NCCBSA to Husband during the pendency of the divorce, $19,000 tax liability for the parties' 2010 income taxes, and $74,000 of debt owed to Husband's brother for the purchase of NCCBSA stock in 2007.[3] Wife's main argument is that the settlement regarding NCCBSA provided that Wife would be "held harmless . . . from any responsibility for any debt or taxes with this business or stock" included the debts discussed above. Husband argues that the language in the settlement agreement pertained only to debt associated with NCCBSA, meaning debt NCCBSA owed third parties, and that the debt included by the trial court in the marital property division was the debt Husband, or Husband and Wife owed to NCCBSA. We find Husband's argument more persuasive on this issue. The settlement agreement indemnifies Wife from any debt owed by NCCBSA, nothing more.

Wife also asserts that requiring her to pay any of these three debts is unfair or unjust. We respectfully disagree. At trial, Husband introduced an exhibit detailing how the $152,866 business loan was used to pay the parties' 2009 income taxes, the fees of one of Wife's expert witnesses, the parties' 2010 income taxes, and one of Husband's expert witnesses.

---

[2]While the supreme court in *Alford* rejected the analysis set forth in *Mondelli* as to the classification of marital debt based upon the "joint benefit" test, the court stated the four factors set forth in *Mondelli* should still be utilized in making an equitable distribution of marital debt. *Alford,* 120 S.W.3d at 814.

[3]At the time of Husband's stock purchase in 2007, he was already part owner of NCCBSA having bought into the company in 1997.

Thus, in line with the factors for allocating marital debt, the purpose of the debt was to pay for expenses in the form of the parties' tax liabilities and debt incurred by both parties as a result of their divorce. We also find that Wife is in a position to pay for a portion of this debt as allocated by the trial court. While Wife argues that this court is not to consider any of the assets she received pursuant to the settlement agreement, we find no merit to this argument. The parties clearly reached an agreement regarding the value of Husband's shares in NCCBSA and the method in which Wife would be compensated for the value of this asset. Thus, the trial court was not asked to rule on this issue when the marital property was divided. However, this court may not pretend that Wife is not receiving a substantial asset as it addresses the issue of need, a factor requiring consideration pursuant to both the factors set forth in consideration of the allocation of marital debt and the factors set forth in Tennessee Code Annotated § 36-4-121 regarding the division of marital property. Wife will be receiving a guaranteed $50,000 salary for the next eight years and substantial assets in the division of marital property. We also note that the trial court allocated the entirety of the $74,000 debt from Husband's stock purchase loan to Husband. Thus, we find no abuse of discretion in the allocation of a portion of this marital debt to Wife as part of the equitable division of property.

## B. Credit Card Debts

Wife's second issue regarding marital property is that the trial court erred in ordering Wife to pay $38,968 of the credit card debt on the Bank of America credit card and by including the entirety of the parties' credit card debt in the marital property division. Wife argues that Husband should be required to pay the entirety of the parties' $67,936 credit card debt. For his part, Husband asserts that the trial court's allocation of the marital credit card debt was equitable.

Wife was ordered to pay half the American Express credit card debt in the amount of $24,920, half the Macy's credit card debt in the amount of $560, and $13,488 of the $16,976 Bank of America credit card debt. Thus, aside from the Bank of America credit card, the credit card debt was distributed equally. The record indicates that the trial court allocated Wife a larger portion of the Bank of America credit card debt because $10,000 of the debt was incurred by Wife to hire an expert witness to locate undisclosed marital assets by Husband. Although Wife paid the expert, he never submitted a report and he did not testify. The trial court found this was an unnecessary expense incurred by Wife and thus allocated to her the larger portion of the debt on the Bank of America credit card. We find nothing to indicate the trial court erred in its allocation of the credit card debt.

Wife also contends that requiring her to pay the credit card debt results in her paying her own temporary support. Pursuant to a temporary support order entered in April 2010,

Wife was authorized to charge up to $2,500 per month on either the Bank of America or American Express credit card and Husband was responsible for paying the credit cards. Wife was not restricted in the charges that she made on the credit cards and the record indicates that both Husband and Wife were making charges on the credit cards during the pendency of the divorce for personal expenses and expenses related to the divorce. At the hearing, Husband admitted that he did not make full payments on the credit cards; nevertheless, the record does not clearly indicate that the amount of credit card debt ordered to be paid by Wife was the amount agreed upon in the April 2010 order. Thus, the record does not support Wife's contention and we see no abuse of discretion as to this finding.

## C. Request for an Additional $60,000 in Marital Property

Wife asserts that the trial court's division of marital property is inequitable to Wife and she requests an additional $60,000 in marital property. In making this assertion, Wife asks the court to disregard any assets and benefits she receives pursuant to the Stock Settlement Agreement. At oral argument, Wife's counsel argued that the assets and benefits Wife receives pursuant to the Stock Settlement Agreement are not to be considered in the division of the remaining marital assets and liabilities or, for that matter, alimony.[4] In an attempt to emphasize this point, Wife's counsel brought two galvanized buckets to court, asserting that the assets and benefits flowing from the Stock Settlement Agreement went into one bucket and all remaining assets are to go into the other bucket. Moreover, he asserted that neither the trial court nor this court may consider the assets or benefits that flowed into the Stock Settlement Agreement bucket. We have concluded that there is a hole in this argument, not to mention the bucket, because the courts are to divide the marital property in an equitable manner, Tenn. Code Ann. § 36-4-121(a)(1); *Miller*, 81 S.W.3d at 775, and to do that the courts must have the benefit of the entire estate, or in this case, both buckets, to make an equitable distribution of the marital estate.

To make an equitable division of the marital estate, the trial court is guided by the factors set forth in Tennessee Code Annotated § 36-4-121(c) and "[t]he division of marital property involves the distribution of both marital assets and marital debts." *Robertson*, 76 S.W.3d at 341. We note that in this case the trial court adopted Wife's proposed division of the marital assets but for the allocation of some of the marital debt. When we consider both

---

[4]In this regard, Husband argues that Wife's failure to include the assets received in the Stock Settlement Agreement in her Tennessee Court of Appeals Rule 7 table in her brief constitutes a waiver of this issue. We recognize that the issue regarding the extent to which the proceeds from the Stock Settlement Agreement should be considered is one of the main issues in this action. Wife's argument is that it was not to be considered in the marital property division and thus did not include it in her Rule 7 table. This court is well aware of this asset and its value and thus we find that while Wife should have included it in her table, it does not result in a waiver of this issue.

buckets, Wife is receiving a substantial award of marital property, in fact she is receiving 51% of the marital property. Considering the entirety of the marital estate and the trial court's division thereof, we find nothing inequitable about this division of the marital estate.

### D. 2010 Tax liability

Having found that the trial court properly included this marital debt in its calculation and its allocation of the debt to Wife, we turn to an issue Husband raised in his brief related to the 2010 tax liability. Husband contends that the trial court made a mathematical error in its order as it pertains to the parties' 2010 tax liability. In the order, the trial court found the tax liability to be $19,000 and split it between the parties $9,500 each. Husband asserts the tax liability was $35,000, and requests the order be corrected to reflect an equal split between the parties at $17,500 each. Wife does not contest Husband's assertion that there was a clerical or mathematical error; she merely contends the court erred by not holding Husband liable for all of the tax liability, regardless of the amount.

First, we find no error with the trial court's decision to hold the parties' equally liable for the 2010 tax liability. Second, the evidence in the record suggests the parties' 2010 tax liability was estimated to be $35,000 but we cannot be sure this is accurate. Accordingly, we remand this issue to the trial court to determine whether this is a clerical or mathematical error and, if so, to correct the error, or whether the $19,000 figure represents a conscious decision of the trial court, and to enter an order in keeping with the trial court's intentions.

## II. ALIMONY

Both parties appeal aspects of the trial court's alimony award. Wife contends, relying again on the two bucket theory, that the trial court should not have considered her salary under the Stock Settlement Agreement in determining her need for alimony. She asserts she should have been awarded alimony in futuro of $11,500 per month instead of $5,000 per month. She also asserts that the trial court erred in denying her request for $170,000 as alimony in solido, which is based on an allegation that Husband dissipated assets. For his part, Husband asserts the trial court abused its discretion in the award of spousal support, stating that an award of alimony in futuro was inappropriate.

### A. Standard of Review

Trial courts are accorded broad discretion in determining "whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011) (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356,

360 (Tenn. 2000)). The determination regarding alimony is factually driven and requires the balancing of many factors including those set forth in the applicable statutory scheme, Tennessee Code Annotated § 36-5-121(i). *Id*. (citing *Kinard*, 986 S.W.2d at 235; *Burlew*, 40 S.W.3d at 470; *Robertson*, 76 S.W.3d at 340-41). This court is disinclined to second-guess a trial court's award of spousal support and we will not set aside such an award absent an abuse of discretion. *Id*. (citing *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006); *Robertson*, 76 S.W.3d at 343). "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id*. (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). Thus, when we review a trial court's alimony determination, we should presume that the decision is correct and review the evidence in the light most favorable to the decision. *Id*. (citing *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335).

## B. Alimony in Futuro

The trial court awarded Wife $5,000 per month of alimony in futuro, which would be reduced to $2,000 per month upon reaching 65 years of age. In its order, the trial court stated its decision was based upon its consideration of the evidence in the record and the applicable statutory factors including the long duration of the marriage and Husband's stipulated fault. We find nothing in the record to indicate that the trial court abused its discretion.

The parties were married for approximately twenty-five years, a marriage of long duration. Wife spent the majority of the marriage at home raising the parties' children, she has been out of the workforce for over twenty-five years, and the record clearly indicates that Wife struggles with her health while Husband is in good health.

Although Husband is correct that the decision in *Gonsewski* affirmed the longstanding preference for rehabilitative alimony or transitional alimony, the Court recognized that alimony in futuro could be awarded when economic rehabilitation is not feasible and long-term support is necessary. *Id*. (citing *Bratton*, 136 S.W.3d at 605; *Robertson*, 76 S.W.3d at 341-42). Further, Tennessee statutes continue to recognize alimony in futuro as a form of spousal support in this state. Tenn. Code Ann. § 36-5-121(f)(1). At the time of the divorce hearing, Wife was fifty-six years old, she has a high school education, and has not worked outside of the home for over twenty-five years. Wife suffers from degenerative disk disease amongst other health problems. Thus, her need has been established. Further, and in contrast, Husband is in good health and has a successful career, and despite Husband's unsupported contention that his business may suffer, clearly the trial court found that Husband has the ability to pay Wife support in this amount.

While it is true that Wife will receive very substantial assets from the Stock Settlement Agreement, the payments for these assets may be deferred for up to eight years and some of the payments may be in installments over fifteen years. As this court recently recognized in *Burton v. Mooneyham*, "the parties' standard of living during the marriage remains a statutory factor, as set forth at Tenn. Code Ann. § 36–5–121(i)(9), to be considered in the court's alimony decision." *Burton v. Mooneyham*, M2011-00909-COA-R3CV, 2012 WL 1070121 (Tenn. Ct. App. Mar. 28, 2012) (citing *Gonsewski,* 350 S.W.3d at 111; *Gorman v. Gorman,* M2010–02620–COA–R3–CV, 2011 WL 5599867, at *9 (Tenn. Ct. App. Nov. 16, 2011); *Wiser v. Wiser,* 339 S.W.3d 1, 16–17 (Tenn. Ct. App. 2010)). The modest liquid assets Wife will receive at the beginning of her divorced status, and the significantly lower salary she will receive, provide further support that in order for Wife to maintain a somewhat equitable standard of living, the alimony in futuro award by the trial court is appropriate based upon the facts of this case. Thus, finding no abuse of discretion, we affirm the trial court's award of alimony in futuro.

## B. Alimony in Solido

Wife's argues that the trial court erred in denying her request for $170,000 in alimony in solido for Husband's alleged dissipation of $366,038 of stock dividends. Husband contends that the trial court did not abuse its discretion because there was no dissipation of marital assets.

The determination of whether a dissipation of marital assets occurred is a factual inquiry. *Altman v. Altman*, 181 S.W.3d 676, 682 (Tenn. Ct. App. 2005). Dissipation of assets requires a showing of intentional, purposeful, and wasteful conduct. *Id*. The party alleging a dissipation of marital assets has the burden of persuasion and the initial burden of production." *Id*. "After the party alleging dissipation establishes a prima facie case that marital funds have been dissipated, the burden shifts to the party who spent the money to present evidence sufficient to show that the challenged expenditures were appropriate." *Id*. (citing *Wiltse v. Wiltse*, No. W2002–03132–COA–R3–CV, 2004 WL 1908803, at *4 (Tenn. Ct. App. Aug.24, 2004); *Bratcher v. Bratcher*, 26 S.W.3d 797, 799 (Ky. Ct. App. 2000); *Turner v. Turner*, 809 A.2d 18, 52 (Md. 2002); *Anderson v. Anderson*, 514 S.E.2d 369, 380 (Va. Ct. App. 1999)). Dissipation of assets is a factor to be considered in the division of the marital property. *Id*.

Wife asserts that over the course of 2008, 2009, and 2010, Husband received $366,038 in stock dividends, which he "used and concealed." Based upon the above authorities, Wife had the burden of persuasion to demonstrate the alleged dissipation; however, the trial court was unpersuaded by Wife's argument that Husband dissipated assets received as dividends. The only evidence in the record regarding Husband receiving

dividends were as line items in two exhibits and very limited testimony regarding the dividends. There is no evidence that Husband hid the assets or wasted the amount received. Further, the more appropriate section for this issue to be considered would be in the division of the marital property. Finding no abuse of discretion, we affirm the trial court's denial of Wife's request for alimony in solido.

### III. COBRA INSURANCE

Wife contends the trial court erred in denying her request that Husband pay Wife's COBRA health insurance following the termination of her employment with NCCBSA in 2019.

Pursuant to the Stock Settlement Agreement, Wife will receive full employment benefits for the next eight years, which includes health insurance benefits. Wife, however, argues that Husband should pay for her insurance for a period of thirty-six months starting at the end of the eight-year employment agreement. The trial court found that it was "too speculative" to determine which party should be responsible for the cost of health insurance following the termination of Wife's eight-year employment contract.

During the eight years following the entry of the final judgment, Wife will be employed and receive a substantial marital property division. After that, unless she has married, Wife will continue to receive alimony. Further, she will be close to the age of eligibility for Medicare and Social Security benefits. Considering the various factors to be considered, we cannot conclude that the trial court abused its discretion in denying Wife's request for COBRA life insurance starting in 2019.

### IV. ATTORNEYS' FEES

Wife asserts that the trial court abused its discretion in awarding her only $50,000 in attorneys' fees when she had requested $115,528.88 for her attorneys' fees and expenses.

"An award of attorney's fees in divorce cases is treated as a form of spousal support, and the award is characterized as alimony in solido." *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001) (citing *Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999); *Anderton v. Anderton,* 988 S.W.2d 675, 682 (Tenn. Ct. App.1998); *Smith v. Smith*, 984 S.W.2d 606 (Tenn. Ct. App.1997); *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App.1988)). The trial court has wide discretion to award attorney's fees. *Id*. Upon review, this court will not interfere with an award, except upon a showing of an abuse of discretion, where the evidence preponderates against the award. *Id*. (citing *Long v. Long,* 957 S.W.2d

825 (Tenn. Ct. App.1997); *Kincaid,* 912 S.W.2d at 144; *Elliot v. Elliot,* 825 S.W.2d 87, 92 (Tenn. Ct. App.1991); *Butler v. Butler,* 680 S.W.2d, 467, 470 (Tenn. Ct. App.1984)).

The trial court made certain findings relative to this issue that must be considered by this court. For one, the trial court stated from the bench "The Court has reviewed the filings of Mr. Pollan with regard to the allegations concerning running up the expenses and the numerous lawyers, the different experts that have been involved. And the Court does think there is some legitimacy to those concerns." The record reflects that Wife was initially represented by Rose Palermo, who withdrew and was succeeded by Philip Robinson. Mr. Robinson subsequently filed a motion to withdraw indicating that his client had fired him. Russ Hellman and Joanie Abernathy represented Wife thereafter and continue to do so on appeal.

Husband contends on appeal that Wife's decision to hire and fire a series of lawyers caused her attorneys' fees (and his) to increase unnecessarily. He also contends that she engaged in tactics that increased attorneys' fees and expenses to both parties, for which she should not be rewarded. In his brief, Husband cites to a statement by the trial court, which was made in response to Wife's second motion to stay the enforcement of paragraph 10 of the Final Decree regarding the division of the parties' debts, wherein the trial court stated, "[the motion] was devoid of merit, as it was the first time." Husband further asserts, relying on a quote from *Andrews v. Andrews*, 344 S.W.3d 321, 345 (Tenn. Ct. App. 2010) that "[a] party's decision to engage in litigation tactics calculated to produce delay and increase costs is a factor to be considered in connection with an award of attorney's fees."

Having reviewed the record, we find the trial court did not abuse its discretion by limiting the award to $50,000. Therefore, we affirm the trial court's award of attorneys' fees.

Wife has requested this court to award her attorneys' fees incurred on appeal. As we have ruled in favor of Husband on all issues raised in this appeal, we respectfully decline her request for attorneys' fees.

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects except for the issue of the parties' tax liability for 2010, which issue is remanded to the trial court for further consideration. Costs of appeal are assessed against the Appellant, Lynette Rooney.

_____
FRANK G. CLEMENT, JR., JUDGE