Lucille **HILSMEIER**, Appellant,

v.

Joe A. **CHAPMAN**, Administrator of the Estate of J.G. Chapman, Deceased, Appellee.

**and**

Debbie Allen, Appellant

v.

Joe A. Chapman, Administrator of the Estate of J.G. Chapman, Deceased, Appellee.

No. 2003–SC–0281–DG, 2003–SC–0303–DG.

Supreme Court of Kentucky.

May 18, 2006.

Thomas A. Noe, III, J. Gail Guiling, Noe & Guiling, Russellville, Counsel for Appellant, Lucille Hilsmeier.

David Thomas Sparks, Bowling Green, Counsel for Appellant, Debbie Allen.

Lee Huddleston, Huddleston & Huddleston, Bowling Green, Counsel for Appellee.

Opinion of the Court by Justice JOHNSTONE.

These cases arise from a judgment of the Warren Circuit Court in favor of Appellee, Joe A. Chapman, Administrator of the Estate of J.G. Chapman. In an action against Lucille Hilsmeier and Debbie Allen, Joe A. Chapman (hereinafter Appellee) alleged that Allen and Hilsmeier had procured an inter vivos gift from J.G. Chapman (hereinafter Chapman) as a result of either their own undue influence or, alternatively, Chapman's unsound mind. Following a trial, the jury returned a verdict in favor of the estate. The Court of Appeals affirmed the judgment. For the reasons set forth herein, we reverse.

Allen was a financial advisor employed by A.G. Edwards from 1992 to 1998. During this period, Allen developed a business relationship with Chapman, which later developed into a personal friendship. In February 1996 and again in April 1996, after Chapman was no longer a client of A.G. Edwards, Allen assisted Chapman in placing a large sum of money in an account with Putnam Investments of Providence, Rhode Island. This account is the subject of the present actions.

In 1995, Chapman's wife passed away and, soon thereafter, Chapman himself was hospitalized due to a hernia. During this period, Chapman's children—Joe Chapman, James Chapman, and Margaret Chapman Adams—sought appointment of a guardian for their father in Warren District Court. It is undisputed that Chapman was very distressed by this action, and his relationship with his children consequently became strained.

A jury trial concerning the guardianship was conducted in May 1995. A Warren District Court jury ultimately found that Chapman was competent to handle his own financial affairs, but believed that he should not be driving an automobile. Chapman's children agreed that Allen could serve as a limited guardian for purposes of ensuring that he did not drive.

After the competency hearing, Chapman began liquidating a substantial portion of his assets. He deposited significant sums of money into various accounts between 1995 and 1997, and also sold a valuable farm. Following a bad fall in March 1997, Chapman passed away. He died intestate, and Appellee was appointed administrator of his father's estate.

Following his appointment, Appellee learned that his father had transferred $198,593.36 into an account owned by Allen's mother, Lucille Hilsmeier, and held with Putnam Investments. By letter dated April 29, 1996, Chapman had directed Putnam to transfer this sum from his own account into Hilsmeier's. (Chapman had opened his Putnam account a few months prior.) According to Hilsmeier's testimony, Chapman had attempted on several occasions to give money directly to Allen as a gift, but she declined. He confided to Hilsmeier that he was going to put money into an account in her name, with the intention that she pass it on to Allen. Thereafter, by a series of transfers conducted by Hilsmeier, the funds were eventually moved into accounts held solely by Allen.

Appellee initiated a lawsuit against Hilsmeier and Allen on behalf of the estate, alleging that Chapman lacked the requisite

mental capacity to open the Putnam account, and that Allen had exerted undue influence upon Chapman causing him to open the account and causing him to transfer the funds into Hilsmeier's account. A Warren Circuit Court jury returned a verdict in the estate's favor and judgment was entered accordingly. Allen and Hilsmeier appealed, claiming that the trial court improperly received evidence, that they were entitled to a directed verdict, and that the jury was improperly instructed. The Court of Appeals affirmed, and this Court thereafter granted Allen's and Hilsmeier's motions for discretionary review.

On appeal, Hilsmeier and Allen again raise three issues, all of which were considered by the Court of Appeals: (1) that the trial court improperly received evidence concerning Chapman's mental capacity, (2) that the trial court erred in denying their motion for a directed verdict, and (3) that the trial court erred in instructing the jury. Because we conclude that the jury was improperly instructed, we reverse. Furthermore, as this issue is determinative of the matter, we address only the jury instructions.

■ The issue is preserved by counsels' objections to the tendered instructions, which were made before the trial court instructed the jury. CR 51(3). The jury was instructed, in relevant part, as follows:

(1) You will find for Joe A. Chapman, Administrator of the Estate of J.G. Chapman, Deceased (the J.G. Chapman Estate) and award the estate the sum of $198,593.36, less any amounts that you believe from the evidence that were returned to J.G. Chapman prior to his death, unless you believe from the evidence that J.G. Chapman, on May 7, 1996, transferred an interest in his Putnam High Yield Trust Account, valued at $198,593.36 to Lucille Hilsmeier's (Hilsmeier) Putnam High Yield Trust Account with the intention of giving it to Debbie Allen (Allen) and Hilsmeier, in which event you will find for Allen and Hilsmeier.

(2) Even though you might otherwise believe the transaction to be a gift, if you further believe from the evidence that J.G. Chapman was of unsound mind at the time of the transaction or that the gift of the Putnam Investment Account was obtained under undue influence by Allen and/or Hilsmeier, in both or either of which events, you will find for the J.G. Chapman Estate.

The remaining instructions defined the terms "sound mind" and "undue influence."

Allen and Hilsmeier correctly argue that these instructions are erroneous for two reasons. First, subsection (2) of the instructions fails to provide the jury the opportunity to specify whether its findings of liability were based on undue influence, unsound mind, or both. Because the jury ultimately ruled in favor of Chapman, it presumably believed that the transfer was not a valid gift, though even this conclusion is tenuous as the instructions neither defined the term "gift" nor provided the jury an opportunity to specifically state that it rejected the gift theory. Nevertheless, even assuming that the jury did not find a valid gift, it is unclear whether it believed that the invalid gift was the result of undue influence, unsound mind, or both. Moreover, if the jury had determined that the gift was the result of undue influence, it is impossible to distinguish exactly which defendant is liable, as the instructions only required that the jury believe that Hilsmeier "and/or" Allen exerted undue influence.

The fundamental function of jury instructions is to set forth what the jury must believe from the evidence in order to return a verdict in favor of the party bearing the burden of proof. *Webster v. Commonwealth*, 508 S.W.2d 33, 36 (Ky.1974). We acknowledge Kentucky has long employed the use of "bare bones" jury instructions that avoid an abundance of detail, providing only a framework of the applicable legal principles. *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226 (Ky.2005). However, instructions may not be so vague or diluted as to obscure the jury's findings. Indeed, to ensure a fair trial and avoid unnecessary appellate procedure, they must be sufficiently clear to reveal precisely the jury's conclusions: "An instruction should be free of ambiguity and not open to various interpretations by the jury." *Coe v. Adwell*, 244 S.W.2d 737, 740 (Ky. 1951). Here, we cannot discern what the jury believed because all three theories propounded at trial—valid gift, undue influence, and unsound mind—are combined in a single instruction with only two subsections: "Blending separate and distinct legal propositions in the same instruction is bad form and it is much better practice to incorporate each proposition in a separate instruction." *H & S Theatres Co. v. Hampton*, 300 Ky. 677, 190 S.W.2d 39, 40 (1945). *See also Hodges v. Yarbro*, 374 S.W.2d 845, 847 (Ky.1964). ("We do not approve of the instruction offered by the plaintiff since it . . . attempts to put all of the law of the case in one instruction.")

Furthermore, the instructions in this case were flawed because they did not accurately reflect Kentucky law. The trial court erred in failing to instruct the jury to apportion liability between Hilsmeier and Allen. Kentucky's comparative fault statute, KRS 411.182, requires allocation of fault "in all tort actions." KRS 411.182(1). Chapman argues that comparative fault principles are not applicable to intentional torts, noting that this is the majority rule. *See* 18 ALR 5th 525 (1994). Though Appellee is correct that this is an issue of first impression in Kentucky, we need not evaluate the purpose or theory underlying this common law principle. The General Assembly has answered the question of whether comparative fault principles apply equally to negligent and intentional torts in the affirmative. By its own language, KRS 411.182 applies to "all tort actions." *Cf. Sieben v. Sieben*, 231 Kan. 372, 646 P.2d 1036, 1041 (1982). (Holding that apportionment of fault does not apply in intentional tort cases, in part, because "our comparative fault statute . . . has done nothing to change the common law rule of joint and several liability for defendants in intentional tort actions.") *Bell v. Mickelsen*, 710 F.2d 611, 617 (10th Cir.1983) (declining to apply comparative fault principles to intentional tort action because Wyoming's comparative fault statute applies, by its own language, to actions for negligence). This language is unambiguous; when the language of a statute is clear, this Court will interpret it according to its plain meaning. Therefore, the trial court was required to instruct the jury concerning apportionment.

This flaw in the instructions is further compounded by the fact that they did not elicit separate findings of culpability as to Hilsmeier and Allen. Chapman argues that it was impossible to separate fault in this case, rendering separate instructions and/or apportionment unnecessary. The evidence presented at trial belies this assertion, however. Hilsmeier testified that Chapman expressed his desire to gift money to Allen despite her previous refusals, and that he subsequently transferred the disputed sum to Hilsmeier's account as a means of eventually giving it to Allen. It is uncontroverted that the entirety of the disputed funds was later transferred out of

Hilsmeier's account; in fact one of the transferring instruments was even signed by both Hilsmeier and Chapman. Based on the evidence, the jury could have reasonably believed that Hilsmeier did not exert any undue influence upon Chapman, but simply followed the directions of both him and Allen by signing documents that moved the money in and out of her Putnam account. If this was, in fact, the jury's conclusion, the instructions nevertheless required a verdict against *both* Hilsmeier and Allen.

For the reasons set forth above, the instructions in this case were fundamentally flawed and prevented a reliable verdict. Upon retrial and if the jury does not believe a valid gift occurred, it should be instructed not only to make separate and specific findings of liability as to Hilsmeier and Allen, but also to apportion damages between the two. Accordingly, we reverse the Court of Appeals and remand the matter to the Warren Circuit Court for further proceedings consistent with this opinion.

■ Because such issues may reoccur upon remand, we briefly address the two remaining arguments raised by the Appellants. Both Hilsmeier and Allen argue that the trial court erred in denying their motions for directed verdicts. "[A] trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." *Bierman v. Klapheke*, 967 S.W.2d 16, 18–19 (Ky.1998). Without a detailed recitation of the facts, suffice it to say that the testimony of Chapman's children established an adequate basis upon which the jury could have found against both Hilsmeier and Allen, under either a theory that the transfer was not a valid gift or a theory of undue influence.

■ Furthermore, we find no error with respect to the admission of evidence concerning Chapman's mental capacity prior to the 1995 competency hearing in the Warren Circuit Court. This evidence was objected to on grounds of relevancy, and that its prejudicial effect outweighed any probative value. KRE 401; KRE 403. We find no abuse of discretion in the trial court's admission of the evidence over this stated objection. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). We decline to address any other theories under which this evidence might have been excluded at trial, as such claims were not presented to the trial court and therefore are not preserved for review by this Court. *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky.1976).

All concur.