Michael A. ROSSI, Appellant/Cross–Appellee,

v.

CSX TRANSPORTATION, INC., Appellee/Cross–Appellant.

Nos. 2009–CA–001234–MR, 2009–CA–001285–MR.

Court of Appeals of Kentucky.

Dec. 17, 2010.

Discretionary Review Denied by Supreme Court Feb. 15, 2012.

512

Alva A. Hollon, Jr. (argued), John O. Hollon, Jacksonville, FL, Thomas I. Eckert, Hazard, KY, for appellant/cross-appellee.

Linsey W. West, Kara M. Stewart (argued), Lexington, KY, Jill F. Endicott, Lousiville, KY, for appellee/cross-appellant.

Before LAMBERT, MOORE and NICKELL, Judges.

## OPINION

NICKELL, Judge:

Michael A. Rossi has appealed from the Perry Circuit Court's May 27, 2009, entry of judgment in favor of CSX Transportation, Inc., following a jury trial on his claims under the Federal Employers' Liability Act (FELA)[1] of work-related cumulative trauma resulting in bilateral carpal tunnel syndrome and trigger finger in two fingers. He contends the trial court erred in various rulings on evidentiary issues made throughout the trial and in its instructions to the jury. CSX has cross-appealed from the same judgment alleging a different error in the jury instructions. We affirm.

Rossi has been employed as a machinist in the railroad industry for more than twenty-five years. After working for Conrail for approximately four years, he was hired by a predecessor railroad of CSX in 1984. Among other forceful and repetitive tasks in performing his duties as a machinist, Rossi used various pneumatic hand tools on a daily basis. The frequency and duration of the use of these tools varied daily depending upon the job Rossi was performing. The tools produced vibra-

---

1. 45 U.S.C. § 51, et seq. *See CSX Transp., Inc. v. Begley*, 313 S.W.3d 52, 57–60 (Ky. 2010), for an excellent discussion of the history and purpose of the FELA.

tions and had no protective padding on their handles to lessen the effects of the vibrations. Rossi testified he would feel the shaking from his hands, up to his shoulders, and sometimes in his neck and head. Rossi claimed CSX did not issue gloves to wear while operating the hand tools, nor did CSX offer training on how to lessen the effects of the vibrations on the upper extremities.

Rossi began feeling tingling and numbness in his right hand when using the tools, reading a book, or talking on the telephone. Based on these indications, Rossi sought treatment from Dr. David Muffly, an orthopedic surgeon, who diagnosed bilateral carpal tunnel syndrome and trigger finger in Rossi's left thumb and right small finger in May 2002. Four surgeries were ultimately performed to alleviate the symptoms. Rossi missed approximately ten months of work following the surgeries before returning to the workforce. He continues to work for CSX without restrictions and has claimed no permanent impairment or future medical expenses.

On January 1, 2004, Rossi filed the instant complaint in the Perry Circuit Court seeking damages for his injuries under the FELA. He alleged his duties requiring the use of vibrating tools caused excessive and harmful cumulative trauma, resulting in his work-related carpal tunnel syndrome, pain and numbness in his finger, and "other physical maladies." He contended CSX's negligence was the proximate cause of his injuries. He alleged CSX failed to maintain a reasonably safe workplace, offer adequate physical or mechanical assistance with lifting heavy objects, take action to reduce the amount of cumulative trauma to which he was exposed or inform

him of the risks of such trauma, provide him with protective equipment, promulgate or enforce adequate safety rules, eliminate or modify his job duties or equipment to minimize the risk of cumulative trauma, and otherwise comply with the mandates of the FELA.

Following a lengthy period of discovery and failed attempts at mediation, a jury trial was convened on April 27, 2009. After hearing five days of evidence and one day of counsel's arguments, on May 5, 2009, the jury returned a verdict in favor of CSX. The trial court entered a final judgment conforming to the jury's verdict on May 27, 2009. This appeal followed.

Rossi advances four contentions of error in urging reversal. First, he alleges the trial court erred in issuing a prohibition precluding his expert biomedical engineer, Tyler Kress, Ph.D., from testifying regarding the cause of Rossi's carpal tunnel syndrome and trigger finger. Second, he argues the trial court erred in prohibiting him from cross-examining one of CSX's witnesses using a document with which the witness was unfamiliar. Third, Rossi contends the trial court erroneously failed to instruct the jury that the Federal Railroad Administration (FRA) requires railroads to report all musculoskeletal injuries to the FRA under certain circumstances. Finally, Rossi contends the trial court erred in precluding his rebuttal witness, Justin Cloud, from testifying.

▮ Rossi first contends the trial court erroneously prohibited Kress from testifying that Rossi's carpal tunnel syndrome was caused by his work at CSX. He argues that, as a biomedical engineer, Kress was qualified to opine that "the risk factors present at the job site caused [Rossi's] injuries." Following a Daubert[2] hearing,

2. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Although Daubert explicitly concerns expert witness testimony in

the trial court allowed Kress to testify that Rossi was exposed to the risk factors consistent with the development of cumulative trauma injuries, but would not allow him to make a medical diagnosis since he was neither a medical doctor nor had Kress physically examined Rossi or conducted any diagnostic testing on him.

■ Trial courts act as gatekeepers whose function is to ensure that only scientifically reliable evidence is presented by expert witnesses. This function requires the trial court to first assess whether methodology or reasoning underlying the evidence is scientifically reliable, and then determine whether such evidence will assist the trier of fact in understanding or determining a fact in issue. *Daubert*, 509 U.S. at 592–93, 113 S.Ct. at 2796. We review a trial court's determination of the reliability of an expert's testimony for clear error, *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky.2004), and its determination of relevancy of such testimony for abuse of discretion. *Id.* at 922. This is so because the question of the reliability of an expert's testimony is a factual determination to be made by the trial court which is entitled to deference as the trial court is in the best position to evaluate the proposed testimony, and the question of relevancy falls within the discretionary function of the trial court.

Here, the trial court found Kress did not have the qualifications to give a medical diagnosis or an opinion as to the causation of Rossi's injuries. Thus, the trial court made its determination solely on the reliability of the evidence and did not reach the question of relevancy. Because the trial court made only a factual determination,

our review must be limited to an inquiry of clear error. Errors in the exclusion of evidence do not justify reversal unless the failure to do so appears "inconsistent with substantial justice." CR[3] 61.01. We are unable to discern such an error.

Kress was clearly qualified to testify as to the risk factors for developing carpal tunnel syndrome and trigger finger. His credentials were impressive and uncontroverted on the subject. The trial court conducted a thorough *Daubert* hearing and concluded Kress possessed the requisite knowledge, skill and training to reliably testify as to those risk factors present in Rossi's work environment, but did not have the necessary credentials to offer causation testimony. It is undisputed Kress is not a medical doctor and did not physically examine or test Rossi. The trial court concluded these missing factors were sufficient to preclude Kress from testifying as to a causal connection between Rossi's exposure to the risk factors and his injuries. The court went on to state that even if Kress were a medical doctor, the fact that he had not "done the work" of examining Rossi would preclude him from being able to give causation testimony. We cannot say the trial court clearly erred in making this decision.

■ Further, we discern no harm from the exclusion of Kress's testimony because Rossi was able to offer the testimony of his treating physician, Dr. Muffly, that the repetitive movements of his hands and fingers on the job at CSX caused Rossi's injuries. Therefore, we are unable to conclude the trial court's decision ran afoul of substantial justice.

---

the federal courts, the standards to be used by trial courts to determine the admissibility of expert testimony and the standards of appellate review of such decisions have been adopted in Kentucky. *Mitchell v. Common-*

*wealth*, 908 S.W.2d 100 (Ky.1995), *overruled on other grounds by Fugate v. Commonwealth*, 993 S.W.2d 931 (Ky.1999).

**3.** Kentucky Rules of Civil Procedure.

■ Second, Rossi contends the trial court erred in prohibiting him from cross-examining Al Fritts, CSX's former senior safety officer, using a document with which Fritts was unfamiliar. In response to Fritts's statement that CSX encouraged its employees to file accident reports, Rossi attempted to question Fritts regarding a letter purportedly authored by the FRA and addressed to CSX concerning an investigation into complaints that CSX actually discouraged its employees from filing accident reports. CSX objected to the use of the letter and a bench conference ensued. The trial court determined Fritts was unfamiliar with the letter or its contents, and expressed concerns that the document was undated, unauthenticated and possibly constituted inadmissible hearsay. The court also noted Rossi had not disclosed the letter or its contents during discovery even though he had sufficient opportunity to do so. For all of these reasons, it prohibited Rossi from utilizing the letter in his cross-examination of Fritts. Rossi believes this ruling was in error. We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Clephas v. Garlock, Inc.*, 168 S.W.3d 389, 393 (Ky.App.2004). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). An abuse of discretion exists only when we are "firmly convinced that a mistake has been made." *Overstreet v. Overstreet*, 144 S.W.3d 834, 838 (Ky.App.2003) (citation omitted). Even then, reversal is unwar-ranted unless the error is not harmless; that is, unless corrected, the error would prejudice the substantial rights of a party. CR 61.01; *see also Davis v. Fischer Single Family Homes, Ltd.*, 231 S.W.3d 767, 776 (Ky.App.2007).

We believe there were sufficient reasons to exclude the letter from evidence or from use in Fritts's cross-examination. As the trial court correctly noted, the proffered letter was unsigned, undated and wholly unauthenticated. Rossi did not produce testimony or evidence of authentication as required under KRE[4] 901, nor did he show the letter was self-authenticating under any of the provisions enumerated in KRE 902. This fact alone is sufficient to preclude the letter. However, there are numerous other evidentiary issues which would support the trial court's ruling. The letter referenced an investigation which had nothing to do with Rossi, his job, his injuries, the cause of his injuries, or any damages allegedly sustained from his injuries. Thus, the relevance of this letter is certainly suspect. *See* KRE 401, 403.

■ Further, the letter was not produced in discovery.[5] The first mention of this letter was during Rossi's cross-examination of Fritts. Pursuant to KRE 602, witnesses "may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fritts informed the trial court that he had no personal knowledge of the letter, its contents, or the investigation mentioned therein. The trial court correctly ruled Fritts could not be questioned regarding a

---

4. Kentucky Rules of Evidence.

5. Although we believe the FRA letter was inadmissible, we note that violations of a trial court's discovery orders can result in the exclusion of otherwise admissible evidence. *See*

*Hamilton v. CSX Transportation, Inc.*, 208 S.W.3d 272, 279–80 (Ky.App.2006). The trial court did not use Rossi's failure as a reason to exclude the letter but would have been well within its rights to have done so.

matter about which he was wholly unfamiliar.

■ Additionally, the letter clearly constituted inadmissible hearsay because there was no evidence adduced from the author[6] of the letter as to its contents. KRE 801. Contrary to Rossi's unsupported argument before this Court, the public records exception set forth in KRE 803(8) does not apply because no indication of the trustworthiness of the document was produced. Rossi submitted no evidence or argument at trial or before this Court to satisfy the requirements of KRE 803(8) or any other exception to the rule against hearsay. The letter was inadmissible for numerous reasons, and the trial court did not abuse its discretion in so finding.

■ Rossi argues that in spite of these admissibility issues, he should have been allowed to use the letter for impeachment purposes. However, one may not thwart the purposes of the evidentiary rules simply by labeling an otherwise inadmissible piece of evidence or characterizing one's argument as "impeachment." *See Slaven v. Commonwealth*, 962 S.W.2d 845, 858 (Ky.1997) (party cannot knowingly elicit testimony as guise or subterfuge to impeach witness with otherwise inadmissible evidence). Here, Rossi's questioning of Fritts could be seen as an attempt to "open the door" as a prerequisite to using the FRA letter for "impeachment." Such tactics are not sanctioned by the evidentiary rules nor should they be permitted. As the trial court correctly found, even if the letter could have been used for impeachment purposes, Rossi had not "followed the rules" to do so. There was no error in excluding the letter.

■ Third, Rossi contends the trial court erroneously failed to instruct the jury that the FRA requires reporting of all musculoskeletal injuries under certain circumstances. We disagree.

■ Kentucky employs the use of "bare bones" jury instructions. *Hilsmeier v. Chapman*, 192 S.W.3d 340, 344 (Ky. 2006). "Instructions must be based upon the evidence and they must properly and intelligibly state the law." *Howard v. Commonwealth*, 618 S.W.2d 177, 178 (Ky. 1981). "The purpose of an instruction is to furnish guidance to the jury in their deliberations and to aid them in arriving at a correct verdict." *Ballback's Adm'r v. Boland–Maloney Lumber Co.*, 306 Ky. 647, 652, 208 S.W.2d 940, 943 (1948). Proper instructions inform the jury "what it must believe from the evidence in order to return a verdict in favor of the party who bears the burden of proof." *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226, 229 (Ky.2005). Alleged errors regarding jury instructions are questions of law that we review under a *de novo* standard. *Reece v. Dixie Warehouse and Cartage Co.*, 188 S.W.3d 440, 449 (Ky.App.2006).

> Rossi's proffered instruction stated:
>
> The jury is instructed that the Federal Railroad Administration has issued a regulation which states that musculoskeletal disorders such as carpal tunnel syndrome or trigger finger are injuries which railroads are required to report to the Federal Railroad Administration when the injury, for example, results in medical treatment or a day away from work.

This instruction fails to include any information advising the jury what it must believe from the evidence to return a verdict

---

**6.** As we have previously noted, the letter was unsigned and thus, the purported author was, and remains, unknown.

in Rossi's favor. Our review of the record reveals no testimony or argument that CSX violated the FRA regulations or reporting requirements. There was likewise no evidence or testimony adduced regarding the existence or substance of the FRA regulation referred to in the instruction. Without supporting evidence in the record, there can be no basis for giving an instruction. *See Howard.* We are further unconvinced that the jury would be misled or confused as to the issues before it without the inclusion of this instruction, and Rossi's argument to the contrary is without merit. Therefore, we conclude the trial court correctly refused to give the proffered instruction.

■■■ Finally, Rossi argues the trial court incorrectly precluded him from offering the rebuttal testimony of Justin Cloud, one of Rossi's coworkers. Rossi intended to use Cloud's testimony along with that of three other witnesses to rebut the evidence presented by CSX that it did not discourage its employees from filing accident reports. The trial court ruled that Cloud would be excluded because he was not identified on Rossi's witness list and his testimony was not responsive to any surprise evidence presented by CSX. The other three witnesses—who were identified on the witness list—were allowed to testify. Cloud's testimony was presented by avowal.[7]

We review the decision to admit or exclude witness testimony for an abuse of discretion. *Clephas v. Garlock, Inc.*, 168 S.W.3d at 393. This standard applies equally to the trial court's decisions on whether evidence is competent and appropriate for rebuttal. *Stopher v. Commonwealth*, 57 S.W.3d 787, 799 (Ky.2001); *Ajax Coal Co. v. Collins*, 269 Ky. 222, 106 S.W.2d 617, 619 (1937). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). An abuse of discretion exists only when we are "firmly convinced that a mistake has been made." *Overstreet v. Overstreet*, 144 S.W.3d at 838 (citation omitted).

Rossi admits he did not disclose Cloud as a potential witness in any of his written discovery, pretrial compliance or witness lists. However, Rossi contends it was impractical to identify Cloud as a rebuttal witness because he could not anticipate the evidence CSX would present. He claims there was no way he could have known prior to trial that CSX would offer testimony that it "promotes a culture of safety and its employees are to file an accident report even if the employee is not certain he is hurt." Rossi further contends he is not required to anticipate defenses as part of his case in chief, citing *Houser v. Coursey*, 310 Ky. 625, 221 S.W.2d 432, 433–34 (1949), as authority. Thus, he alleges that since CSX "injected the issue into the case," he should have been allowed to present testimony from Cloud to rebut that evidence. He argues the trial court erroneously found Cloud's testimony would unfairly surprise CSX and deny it a full and fair opportunity to respond.

---

7. Cloud testified he sustained an injury that required treatment while working for CSX. He stated a CSX supervisor, Dwayne Barton, told him that if he reported the injury he would be fired. Cloud was later contacted by Barton who stated he had been instructed to give all injured employees the same warning. After telling Barton he was filing a report, Cloud stated he was asked to change the date of the accident and his version of how it happened to better suit the company. He did not do so. CSX filed its own conflicting report, prompting an investigation by the FRA. That investigation revealed the violation and Barton was terminated from employment.

We agree with Rossi that he is not required to anticipate every shred of evidence and every possible defense CSX could have presented at trial. However, we also agree with the trial court that there should be no surprise that CSX would introduce testimony denying it discouraged injury reporting. Contrary to Rossi's assertion, our review of the record indicates Cloud's testimony would not have been responsive to any testimony adduced at trial by CSX. It was Rossi's counsel who inquired of Fritts as to whether CSX "discourages" employee injury reporting. Thus, Rossi himself injected the issue into the case and raised allegations of harassment and intimidation of CSX employees who were injured on the job. There was no proof offered on this issue by CSX and thus Rossi had no need—and was not entitled—to call a rebuttal witness.

Further, as the trial court correctly found, Rossi had sufficient opportunity to name Cloud as a witness but failed to do so. As we stated earlier, an appropriate consequence for failure to comply with pretrial orders is the exclusion of otherwise admissible evidence. *See Hamilton v. CSX Transportation, Inc.* The same penalty has been sanctioned in relation to a party's failure to name a witness prior to trial. *Clark v. Johnston,* 492 S.W.2d 447, 450 (Ky.1973). We cannot say the trial court abused its discretion in excluding Cloud from testifying based on Rossi's failure to comply with the purpose and spirit of the civil rules. There was no error.

For the foregoing reasons, the judgment of the Perry Circuit Court is affirmed.

ALL CONCUR.