RENDERED: JUNE 16, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NOS. 2020-CA-1389-MR & 2021-CA-0714-MR

BENJAMIN G. DUSING                                        APPELLANT

v.                   APPEAL FROM KENTON FAMILY COURT
                     HONORABLE CHRISTOPHER J. MEHLING, JUDGE
                     ACTION NO. 15-CI-01945

JULIE TAPKE                                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, GOODWINE, AND TAYLOR, JUDGES.

EASTON, JUDGE:  These appeals result from a child custody dispute between the

Appellant, Benjamin G. Dusing ("Ben"), and his ex-wife, Appellee, Julie Tapke

("Julie").  Ben has filed multiple appeals from this family court case.  All but these

two have been dismissed.  We have consolidated the remaining appeals and will

address both appeals in this Opinion.

Ben is an attorney. Ben has been in private practice for several years. Throughout the underlying proceedings, Ben represented himself but with the assistance of multiple co-counsels.

Ben first appeals the family court's granting of Julie's motion *in limine* prior to a hearing on August 27, 2020. Ben had not complied with the family court's pretrial scheduling order which required both parties to exchange lists of witnesses and exhibits they intended to introduce no later than August 13. Ben provided the lists on August 14.

The second appeal is from an Order entered on March 9, 2021, which found Ben in contempt for violation of the parties' Settlement Agreement. The family court also found Ben violated CR[1] 11 ("Rule 11"). The family court ordered a contempt sanction of seven days in jail, conditionally discharged on the condition that Ben comply with all court orders and complete ten hours of community service. The family court ordered Ben to pay Julie's attorney's fees as a sanction for Ben's violation of Rule 11.

This family court action has been exhaustively litigated. The record is voluminous, consisting of numerous boxes of material. A custody hearing about timesharing, which may generally have been expected to last one day, took three

---

[1] Kentucky Rule of Civil Procedure.

days, one more than initially scheduled. Having reviewed the record and the applicable law, we affirm on both appeals.

**NO. 2020-CA-001389-MR**
**THE ORDER SUSTAINING THE MOTION *IN LIMINE***

**FACTUAL AND PROCEDURAL HISTORY**

Ben and Julie were married in 2006. The parties have three minor children. In October 2015, Ben filed a petition for the dissolution of the marriage, initiating Case No. 15-CI-01945. The parties signed a Separation Agreement, which was incorporated into their decree of dissolution entered in October 2016. Since then, Ben and Julie have continued to litigate matters of custody, child support, and parenting time.

In the parties' Settlement Agreement, Ben and Julie agreed to joint custody with Julie having more timesharing than Ben during the school year. During the summer, the parties had equal timesharing, with the children being with one parent one week, then with the other parent the following week. During the school year, Ben had every other weekend plus two hours on Monday evenings and an overnight from Wednesday to Thursday morning.

In October 2019, Ben filed a motion to modify the timesharing schedule for the school year. He requested that Julie have the children from Monday through Wednesday. He would have the children from Wednesday after

school to Friday after school, with alternating weekends. This would have the effect of equal timesharing.

In response, Julie filed a motion to reduce Ben's parenting time. She asked the court to stop overnight visits during the week, to have alternating weekends, and for this to be the schedule year-round. Julie additionally moved the family court to grant her sole decision-making authority regarding the children's medical decisions, educational decisions, and decisions regarding extracurricular activities. She further requested that the family court order all communication between the parties to be done through the Our Family Wizard app, to limit the number of communications between the parties. Julie also sought to modify the transportation clause in the parties' Separation Agreement, to remove the parenting coordinator, and to allow the children to see their paternal (Ben's) family members.

The family court issued a pretrial[2] order on July 31, 2020. It set the trial date for August 27 and 28, and it further ordered the parties to exchange witness and exhibit lists at least 14 days prior to the first day of the trial. This order is compatible with FCRPP[3] 7(1).

---

[2] While the proceedings were in the form of a hearing on motions, we note family courts often refer to these proceedings as a "trial."

[3] Kentucky Family Court Rules of Procedure and Practice adopted by the Kentucky Supreme Court.

On August 13, 2020, at 3:00 in the afternoon, the parties had a hearing on an unrelated motion. This was the day the parties' pretrial lists were due. Ben acknowledged during this hearing that he had received Julie's lists. Julie had not received Ben's lists, and Ben did not mention any problems providing that information on time during the hearing.

Ben did not provide the required lists to Julie until August 14. On August 19, Julie filed a motion *in limine* to exclude the calling of witnesses and introduction of exhibits by Ben for his failure to comply with the family court's pretrial order. This motion was set for the morning of August 27, the first day of the parties' trial.

At a hearing prior to the trial, Ben explained he had printer issues on August 13, which was the cause for the delay in turning over the required documents. Ben stated he had attempted to email Julie's counsel to request an extension, but he said he did not receive a reply. Noting the other avenues Ben had to get the information to Julie's counsel on time, the family court granted Julie's motion and excluded Ben's witnesses and exhibits. As a party, Ben himself was allowed to testify at the hearing.

The hearing lasted all day on August 27 and 28 and was completed on an additional day, September 14. On September 30, 2020, the family court issued its Findings of Fact, Conclusions of Law, and Orders. The family court denied

both parties' requests to change the timesharing schedule. The family court granted Julie's remaining requests. She was granted sole decision-making authority for the children's medical, educational, and extracurricular activities. The decision discontinued the use of the parenting coordinator. The family court also ordered the parties to use the Our Family Wizard app for communication and limited the number of emails to one a day.

## STANDARD OF REVIEW

The family court's evidentiary rulings are reviewed for abuse of discretion. *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky. 2004). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Id.*

## ANALYSIS

In appealing a family court's decision to exclude evidence, it is the appealing party's burden to show 1) the substance of the excluded evidence; 2) that it was an abuse of discretion to exclude the evidence; and 3) there was a substantial possibility the court would have reached a different result if the evidence had not been improperly excluded. *Lewis v. Fulkerson*, 555 S.W.3d 432, 439 (Ky. App. 2017).

KRE[4] 103 sets forth the procedure for preserving claims of error

---

[4] Kentucky Rules of Evidence.

regarding evidentiary rulings excluding evidence. *Hart v. Commonwealth*, 116 S.W.3d 481, 482 (Ky. 2003). KRE 103 states: "(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and . . . (2) Offer of proof. If the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

An "offer of proof must not be too vague, general, or conclusory. While KRE 103(a)(2) does not mandate a formal offer of proof, it does require an indication of 'the facts sought to be elicited or the specific facts the witness would establish.' The purpose of this is twofold. First, a detailed offer of proof provides the trial court with the necessary information to evaluate the objection based upon the actual substance of the evidence. Second, by way of a detailed offer of proof, an appellate court can determine whether a party's substantial rights were affected by the trial court's ruling." *Murphy v. Commonwealth*, 509 S.W.3d 34, 56 (Ky. 2017) (citations omitted).

When Ben was offered time to make his offer of proof during the hearing on August 27, he instead used that time to continue making his objections to the family court's ruling on the motion *in limine*. He did not state what any of

the excluded testimony would be. Ultimately, we need not base our decision on any insufficiency of the offer of proof.

The pretrial order required only lists, and we can ascertain what was excluded from the information in the record. While Ben did not make a detailed verbal offer of proof when given the opportunity to present evidence by avowal, he did file his Pre-Trial Memorandum which included the names of his intended witnesses and summaries of their expected testimonies. The witness information is in the record for our review. Regardless of any issue with Ben's offer of proof, the second and controlling consideration here is whether the family court abused its discretion by excluding Ben's evidence. We conclude that it did not.

Precedent has established trial courts have very broad discretion in enforcing their pretrial orders. *See Rossi v. CSX Transportation, Inc.*, 357 S.W.3d 510, 518 (Ky. App. 2010); *Boland-Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 688 (Ky. App. 2009). "A trial court ruling that it is too late for evidence to come in due to the time for discovery having passed, or delay resulting from noncompliance with a scheduling order would not be an abuse of discretion and is clearly in the court's discretion to make such decisions." *Quattrocchi v. Nicholls*, 565 S.W.3d 622, 630 (Ky. App. 2018). "It is well-settled law in Kentucky that the failure to comply with a trial order with mandatory disclosure of witnesses and exhibits can result in the exclusion of the witnesses or exhibits not disclosed. Such

exclusion is not an abuse of discretion." *Edwards v. State Farm Mutual Automobile Insurance Company*, 389 S.W.3d 641, 643 (Ky. App. 2012).

In the present action, Ben did not comply with the family court's pretrial discovery order. While that court certainly could have used its discretion to excuse the one-day delay, it chose not to, and we will not disturb that ruling as it was not an abuse of discretion. It was the family court's discretion to exercise in this exceptionally litigious case, not ours.

The family court judge stated at the beginning of the hearing on August 27 that he requires strict compliance with his pretrial orders, and that he has always enforced them in this manner. There were several instances during the hearing in which Julie's counsel attempted to use documents that were not previously provided to Ben, and the judge did not allow her to admit those documents or reference them in her line of questioning. The judge held both parties to the same standard.

Ben argues that we should hold the family court's actions here to the requirements for involuntary dismissal of a case outlined in *Ward v. Houseman*, 809 S.W.2d 717 (Ky. App. 1991). We disagree. Ben's case was not dismissed. He was still permitted to present his own testimony and to challenge Julie's evidence. Ben was still allowed to present a substantial case. His direct testimony to the family court alone was approximately two and one-half hours long, and he

had more than an adequate opportunity to cross-examine every one of Julie's witnesses. The parties were given an equal amount of time to present their case. Despite not putting on his own witnesses, Ben used more time than Julie, mostly because of lengthy cross-examinations of Julie's witnesses.

The final prong of the analysis is whether there was a substantial possibility the court would have reached a different result if Ben's evidence had not been excluded. We cannot conclude Ben's excluded witnesses and exhibits would have altered the result of the hearing. Neither Ben nor Julie fully got what they wanted; the timesharing was essentially unchanged.

This was not a case where the result hinged on one fact. This was a multiple day hearing in which the judge ruled based on the totality of a large amount of the evidence, including the evidence elicited during Ben's lengthy cross-examinations. Because Ben has not overcome the requirement of showing an abuse of discretion, we need not discuss the final prong further. The lack of an abuse of discretion requires us to affirm the family court on the first appeal.

### NO. 2021-CA-0714-MR
### ORDER OF CONTEMPT AND RULE 11 SANCTIONS

Ben argues that the family court's order of March 9, 2021, erred in three ways. First, he argues that the family court erred in finding him in contempt. Second, Ben alleges that the family court erred in finding that he had violated Rule

11. Finally, Ben argues that his seven-day jail sentence imposed for contempt was in violation of the law.

## FACTUAL AND PROCEDURAL HISTORY

The family court held a hearing on January 28, 2021, regarding motions for contempt filed by both parties. Ben filed a total of **nine** motions asking the family court to hold Julie in contempt. Only four of these motions survived to be heard at the January 28 hearing.

The first surviving motion was filed on June 17, 2020, and alleged that Julie had violated provisions of the parties' Settlement Agreement in three ways. First, Ben alleged that Julie did not deliver their son to scheduled baseball games. Ben also claimed that Julie unilaterally signed up their youngest daughter for summer camp, in violation of the parties' agreement that both parents had to consent to the children's activities. Finally, Ben alleged that Julie disclosed the contents of a psychological report to third parties.

Ben filed another motion for contempt on November 4, 2020, which claimed that Julie violated an agreement the parties reached about their parent coordination. The agreement was such that either party could call their children on weekdays during the other parent's time sharing with the children between certain designated times. Ben alleged that Julie did not allow this phone call to take place on November 4, 2020.

Ben filed the third motion for contempt on December 2, 2020, claiming that Julie had unilaterally decided not to sign their son up for the upcoming baseball season. A final contempt motion was filed on December 8, 2020, which concerned parenting time when the children were not in school. Ben alleged that Julie did not deliver the children to him on time on a day in which he was to have timesharing.

In addition to Ben's motions asking the family court to find Julie in contempt, he additionally filed **five** motions in which he moved the family court to remove the Guardian *ad Litem* ("GAL"). These motions were filed on October 2, 2020, October 6, 2020, December 7, 2020, December 29, 2020, and January 26, 2021. In the December 29 motion, Ben alleged "gross misconduct" by the GAL, including allegations that the GAL had requested the parties' oldest daughter to record her interactions with Ben. The GAL filed a Rule 11 motion against Ben on November 10, 2020.

Julie also filed a Motion to Show Cause and a Motion for Attorney's Fees against Ben on December 9, 2020. In this motion, Julie alleged that Ben violated the family court's order of September 30, 2020, regarding communications between the parties. Julie alleged that Ben regularly sent more than one email per day to Julie, that he regularly exceeded the word count limit, and that he used prohibited terms in his communications.

-12-

The family court held a hearing on January 28, 2021, to encompass all the pending motions of the parties. The parties were the only witnesses to testify. The hearing was limited to approximately four hours in length, with each party being given equal time.

Ben alleged in his testimony that Julie failed to deliver their son to approximately 25-30 baseball practices or games. He did not testify as to any specific dates or circumstances in which this occurred. In his motion, however, he referenced a three-day baseball tournament, which was to take place in Ohio, beginning on June 12, 2020.

In response to Ben's testimony, Julie testified that their son did miss some practices. She acknowledged that their son did miss the tournament which began on June 12, 2020. She testified she received notice of that tournament about eight days in advance. Julie stated the tournament took place on her parenting time, and that her family had her father's 70th birthday party that weekend, which had been scheduled for months. Julie stated that she gave Ben notice that their son had a prior commitment and would not be present. She testified she provided this notice as soon as she became aware there was a conflict. Julie emphasized this was in accordance with their Settlement Agreement.

Ben additionally testified that Julie violated a term in their Settlement Agreement regarding the confidentiality of a psychological report concerning Ben.

Ben testified text messages between Julie and Jill Bakker (Ben's ex-fiancée, mother to his fourth child, and the appellee in Ben's other family court appeal (No. 2021-CA-0539-MR), which we decide separately today) show that Julie disclosed the contents of said report. Ben alleged the two women, Julie and Jill, were working together against him to deprive him of parenting time with his children. He testified Jill retained the same doctor as a private evaluator after that doctor had performed Ben's psychological evaluation in his and Julie's case. Ben claims this is evidence that Julie informed Jill of the contents of the evaluation.

In response to Ben's cross-examination, Julie acknowledged she did have communication with Jill regarding the psychological evaluation. She stated she discussed the existence of this evaluation with Jill, but that no contents of the evaluation were disclosed. She testified she was "pleased" with the doctor in the case at hand.

Ben additionally alleged in his June 17 contempt motion that Julie violated their Settlement Agreement by unilaterally signing up their youngest child for summer camp. At the time of the summer camp, the terms of the Settlement Agreement directed that both parties had to consent to any extracurricular activity of the children.

Julie testified that when she signed up their youngest child for summer camp, the purpose was for childcare during the summer when the children

were not in school. Julie stated the camp was only during her work hours, during the day, and it did not infringe on Ben's parenting time at all. The parties' Settlement Agreement left the summertime childcare to the party who had physical custody of the children. Julie testified she used the summer camp as her childcare while she was working.

Ben further alleges that Julie violated an agreement between the parties in which they were to allow Facetime phone calls between the children and the party who does not have the children. In his motion, Ben specifically references that Julie did not facilitate this call on the evening of November 4, 2020. Ben testified he and Julie had an agreement through the parenting coordinator that each party would facilitate Facetime phone calls between 8:00-8:30 p.m. on the evenings where the children were with the other party.

Julie acknowledged this agreement has existed; however, she testified that the agreement was "outdated" due to subsequent court rulings. She also testified there was never any court order on this issue. Julie further testified that she facilitates communication between Ben and the children "all the time." Julie testified Ben did speak with the children on November 4, 2020.

Regarding her motion for contempt, Julie testified as to the family court's order controlling the parties' written communications. The parties were ordered to communicate via Our Family Wizard, an app that keeps record of

-15-

written communications. The parties were ordered to send only one email per day, not to exceed 750 words, to only discuss the children, and to not reference "rules," "lines," or "boundaries."

Julie provided evidence that Ben violated all these orders on multiple occasions. He exceeded the email limit at least 21 times. He exceeded the word count at least six times. He referenced "rules" and/or "lines and boundaries" on at least eight occasions. Julie testified that she felt the emails were harassing and personal attacks on her. She requested the family court find Ben in contempt for these violations, and she requested that she be awarded attorney's fees.

During cross-examination, Julie acknowledged that each party emails and texts the other outside of Our Family Wizard. Julie additionally acknowledged that there were days in which she sent more than one email through Our Family Wizard to Ben. She further testified that when she sent more than one email to Ben, it was in response to one of his emails. Julie explained that if she didn't respond to his emails, he would continue to email her until she responded.

Toward the end of the hearing, the family court judge reiterated that his order about communications could not be waived by either party. He then made an amendment to his order that would allow the parties to respond to an email on Our Family Wizard, with that response being no more than 500 words. This effectively altered the order to no more than two emails per day. The judge

additionally stated that no texts should be exchanged between the parties themselves unless it involved an emergency or an immediate scheduling or transportation issue.

Regarding Julie's four Rule 11 motions, Julie testified that she incurred legal fees in defending against Ben's motions for contempt. She testified that his motions were filed to harass and intimidate her. She testified she did not feel Ben filed these motions in good faith. She stated she believes Ben uses the court to continually harass her.

As a specific example, Julie referenced the motion filed on December 8, 2020, in which Ben asked the court to hold Julie in contempt for violating the parties' Settlement Agreement regarding days off from school, specifically snow days and non-holiday Mondays when the children are off from school. The specific day in question was a Tuesday in which the children did not have school. Ben alleged Julie did not deliver the children to him. Julie claims that Tuesdays when there is no school are not covered in their agreement, and the regular parenting schedule would control. Julie testified the Tuesday at issue was on her parenting time. Julie testified, however, that she did allow Ben to get the children that day, even though their agreement did not cover that day.

Julie testified that Ben's relentless filing of motions against her makes her feel powerless. She testified she proactively tries to avoid conflict with Ben.

-17-

She testified Ben uses litigation as a tactic and a weapon against her. She stated defending against these many motions has cost her attorney's fees. She requested the court grant her $5,422 in attorney's fees as a sanction, as that was the amount she had paid in defending these motions. She argued Ben's motions were not based on facts or on a valid interpretation of the governing court orders.

The family court issued an order on March 19, 2021. In this order, the family court denied Ben's motions to hold Julie in contempt. The family court granted Julie's motion to hold Ben in contempt and granted her motions for Rule 11 sanctions. The family court also granted the GAL's motion for Rule 11 sanctions against Ben. For sanctions for the Rule 11 violations, Ben was ordered to pay $5,422 in attorney's fees to Julie, and $2,000 in attorney's fees to the GAL. Some of these fees were ordered to be joint and several with Ben's co-counsel who signed the motions alongside Ben. As for the finding of contempt, the family court ordered Ben to serve seven days in jail, conditionally discharged on the conditions that he abide by the court's orders, perform ten hours of community service, and pay the ordered attorney's fees.

## STANDARD OF REVIEW

"Contempt is the willful disobedience toward, or open disrespect for, the rules or orders of a court." *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996). Appellate review of a finding of contempt is governed by the abuse of

discretion standard. *Meyers v. Petrie*, 233 S.W.3d 212, 214 (Ky. App. 2007).

"The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound reasonable principles." *Penner v. Penner*, 411 S.W.3d 775, 779-80 (Ky. App. 2013). The clear error standard applies to the findings of fact by the family court. *Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011).

Appellate review of a trial court's imposition of Rule 11 sanctions contains a multi-part approach. *Large v. Oberson*, 537 S.W.3d 336, 339 (Ky. App. 2017). First, the trial court's findings in support of sanctions are reviewed by the clearly erroneous standard. *Id.* Second is a *de novo* review of the legal conclusion that a violation occurred. *Id.* Finally, the type and/or amount of the sanctions imposed is reviewed for abuse of discretion. *Id.*

## ANALYSIS

Ben first contends that that the family court erred in finding him in contempt based on his electronic communications. Related to this finding, Ben alleges that the seven-day jail sentence imposed is in violation of law.

Julie alleges in her reply brief that Ben failed to preserve this issue for our review. We agree this issue was not preserved. Ben's Motion to Alter, Amend, or Vacate, filed on March 19, 2021, only raises the issue of the Rule 11 sanctions. He does not reference the family court's finding of contempt, or the

-19-

sentence imposed. Failure to mention an issue in a Rule 59 motion waives it. *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005).

"It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in the lower court." *Skaggs v. Assad, By and Through Assad*, 712 S.W.2d 947, 950 (Ky. 1986). Because Ben failed to preserve the issue of the contempt finding in the family court, we decline to review it further. We will only note the evidence produced at the hearing well supports a finding that Ben willfully violated the court's orders repeatedly, and Ben therefore was in contempt.

Ben's second contention is that the family court erred in finding he had violated Rule 11 and imposing sanctions. We conclude Ben has properly preserved this issue for our review.

CR 11 states:

> Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record . . . . A party who is not represented by an attorney shall sign his pleading, motion, or other paper . . . . The signature of an attorney or party constitutes a certification by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

-20-

In reviewing this order, we must first determine if the family court's findings were clearly erroneous. "A factual finding is not clearly erroneous if it is supported by substantial evidence." *Gullett v. Commonwealth*, 514 S.W.3d 518, 523 (Ky. 2017). "Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." *Large v. Oberson*, 537 S.W.3d 336, 339 (Ky. App. 2017) (internal quotation marks and citations omitted) (citing *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003)).

Some of the facts on this issue are undisputed. The family court found, and both parties agreed, that Ben filed multiple motions for contempt against Julie, alleging that she had violated various provisions of their Settlement Agreement or other court orders. Additionally, Ben filed multiple motions against the GAL, asking the court to remove him.

The court found that none of the actions Ben accused Julie of doing were contemptuous. The family court made substantial findings of fact that Julie's actions were either in line with the parties' Settlement Agreement or did not violate any court order. Additionally, the family court found that Ben's motions against the GAL were unsupported by any facts put into evidence.

"A family court operating as finder of fact has extremely broad discretion with respect to testimony presented, and may choose to believe or disbelieve any part of it. A family court is entitled to make its own decisions regarding the demeanor and truthfulness of witnesses, and a reviewing court is not permitted to substitute its judgment for that of the family court, unless its findings are clearly erroneous." *Bailey v. Bailey*, 231 S.W.3d 793, 796 (Ky. App. 2007). We do not find the findings of the family court erroneous, much less clearly so.

The next prong of the analysis is a de novo review of the legal conclusion that a violation occurred. The family court found that Ben's June 17 motion was "based upon an unreasonable factual inquiry in light of the facts, Petitioner's knowledge of the parties' agreement." It found that his November 14 motion was "not based upon legal authority." The family court ruled that Ben's December 8 motion was "not based upon a reasonable factual inquiry." It further found that Ben's motions and filings against the GAL were unsupported, and that "there is no factual support in the record for the allegations against the Guardian that would require him to be disqualified. The court concludes the motions are not supported by a factual inquiry and therefore they violate Petitioner's duty under Rule 11."[5]

---

[5] Family Court Order of March 9, 2021, Paragraph 14.

We also conclude that Ben's filing of these motions is a violation of Rule 11. "The test to be used by the trial court in considering a motion for sanctions is whether the attorney's conduct, at the time he or she signed the allegedly offending pleading or motion, was reasonable under the circumstances." *Clark Equipment Co. v. Bowman*, 762 S.W.2d 417, 420 (Ky. App. 1988). We do not believe that Ben's conduct was reasonable under the circumstances.

"No CR 11 motion or appeal can be decided in a vacuum. Its very language necessarily turns attention towards the underlying 'pleading, motion or other paper' that gives rise to it." *Tohtz v. United States on Behalf of Department of Housing & Urban Development*, 743 S.W.2d 45, 46 (Ky. App. 1988). We therefore must look to all of Ben's motions to determine if he violated Rule 11. Again, Ben filed a total of nine motions for contempt against Julie, dating from June 17, 2020, through January 14, 2021. He filed five motions against the GAL, dating from October 2, 2020, through January 26, 2021.

Several of Ben's motions against Julie had either been withdrawn or ruled on prior to the January 28, 2021, hearing. Of the four remaining, the family court found that none of them had any merit. While Ben may have been able to articulate some argument that some of his motions were reasonable and made in good faith, the sheer number of meritless motions filed within a short period of

-23-

time certainly indicate that Ben's motive was an improper purpose, such as harassment or increasing the cost of litigation, in violation of Rule 11.

This Court agrees with the family court that several of Ben's motions have no basis in fact or in law. The motion Ben filed on December 8 is regarding timesharing of the parties on a day when the children are off school. It is clear based on the reading of the parties' Settlement Agreement that this day would be covered under the normal timesharing schedule, not any special provision. Ben argues that the parties had been trading those off-school days, so he believed the agreement had been amended by their practice. However, the parties have a clear prohibition against amending their Settlement Agreement. Paragraph 18 states: "This Agreement shall not be altered, changed or modified except that it be done in writing and signed by both parties."[6] Additionally, even if Ben were under the impression that it was supposed to be his day with the children, testimony was presented that Ben did have the children on that day. Therefore, there was no logical basis for filing this motion for contempt.

The same can be said for Ben's December 2 motion. The basis of this contempt motion was that Julie did not sign up the parties' son for baseball. (The family court previously overruled this motion on December 18, 2020.) At this point in time, the family court had ruled that Julie had sole decision-making

---

[6] Separation Agreement of October 26, 2016, Paragraph 18.

-24-

authority for the children's extracurricular activities. A clear court order existed that covered this issue. Ben's motion was not grounded in law or fact and was a violation of Rule 11.

Additionally, Ben filed five motions against the GAL. While Ben is correct that Rule 11 does not require an affidavit to be filed, there must be some assertion of specific facts to find a violation. Ben's motions against the GAL made no specific actions of wrongdoing, merely vague accusations of "Bias, Conflict of interest, Noncompliance with [Kentucky Bar Association] GAL Standards, Usurpation of Parental Functions Presenting Clear and Present Danger to the Parties' Children's Best Interests, and Professional Malpractice,"[7] and "Gross Misconduct."[8] Ben's primary complaint against the GAL is the GAL refuses to speak with him about the children's case. He cites no authority, however, that the GAL is required to obtain information from him about the children's case. Nor were we able to locate any authority that stated such a duty.

The GAL is "a child's representative appointed to participate actively as legal counsel for the child, to make opening and closing statements, to call and to cross-examine witnesses, to make evidentiary objections and other motions, and to further the child's interest in expeditious, non-acrimonious proceedings . . . ."

---

[7] Motion filed December 7, 2020.

[8] Motion filed December 29, 2020.

*Morgan v. Getter*, 441 S.W.3d 94, 111 (Ky. 2014). A GAL's role is to advance the best interests of the children. *Id* at 115. "A GAL has the same overarching statutory duty in child custody proceedings as a judge – to ensure the best interests of the child are met. GALs are appointed by court order at the behest of the presiding judge or a party. This appointment furthers the judge's duty to determine the best interests of the children by ensuring the court is presented with unbiased evidence in support of those interests, not merely the biased advocacy of the parents." *Gambrel v. Croushore as Next Friend of Villarreal*, 638 S.W.3d 452, 459 (Ky. App. 2021).

These facts, coupled with the number of contempt motions filed (a total of 14, filed within a seven-month period, not including the motions filed to disqualify the presiding judge) is certainly adequate to make a finding that Ben violated Rule 11. Rule 11 "is a procedural rule designed to curb abusive conduct in the litigation process." *Clark Equipment Co. v. Bowman*, 762 S.W.2d 417, 420 (Ky. App. 1988). We conclude that the family court made an appropriate finding.

Finally, we review the type and amount of the sanctions for abuse of discretion. The family court ordered Ben to pay $5,422 in attorney's fees to Julie's counsel and $2,000 in attorney's fees to the GAL as a sanction for his Rule 11 violations. Rule 11 allows courts the authority to grant attorney's fees to those who violate it. *Raley v. Raley*, 730 S.W.2d 531 (Ky. App. 1987). "Attorney's fees

are appropriate sanctions for violations of CR 11." *Yeager v. Dickerson*, 391 S.W.3d 388, 395 (Ky. App. 2013).

"The amount of an award of attorney's fees is committed to the sound discretion of the trial court with good reason." *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990). "[T]here is no abuse of discretion nor any inequity in requiring the party whose conduct caused the unnecessary expense to pay it." *Id.* Both Julie and the GAL asked the family court to grant them attorney's fees in defending Ben's motions. The family court found that Julie and the GAL provided adequate evidence of their attorney's fees incurred in defending Ben's motions. It is perfectly reasonable to order Ben to pay the attorney's fees associated with these actions.

"The only appropriate award of attorney's fees as a sanction comes when the very integrity of the *court* is in issue. To that end, attorney's fees may be awarded under Civil Rule 11 for filing pleadings that are not 'well grounded in fact,' not 'warranted by existing law or a good faith argument for the extension, modification or reversal of existing law,' or that are filed for 'any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" *Bell v. Commonwealth, Cabinet for Health & Family Services, Department for Community Based Services*, 423 S.W.3d 742, 749 (Ky. 2014).

We conclude that attorney's fees as a Rule 11 sanction is appropriate here. Ben filed 14 contempt motions in a matter of months, and the family court deemed all of them meritless. If there are no consequences to these frivolous filings, there will be no reason for Ben to stop filing motions to harass his ex-wife and the GAL. The family court did not abuse its discretion in its ordering of attorney's fees. We therefore affirm this ruling of the family court.

## CONCLUSION

The family court's findings of facts are supported by the evidence and thus not erroneous. The family court committed no error of law and properly acted within its discretion. The Kenton Family Court is AFFIRMED on both appeals.

ALL CONCUR.

BRIEF FOR APPELLANT:

Benjamin G. Dusing, *pro se*
Fort Wright, Kentucky

Brandy K. Lawrence
Fort Wright, Kentucky

Jeffrey J. Otis
Covington, Kentucky

BRIEF FOR APPELLEE:

Ruth B. Jackson
Crestview Hills, Kentucky